**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:14-cv-21244-JLK**

JASZMANN ESPINOZA, et al.,
and all persons similarly situated

      Plaintiffs,

v.

GALARDI SOUTH ENTERPRISES,
Inc., et al.

      Defendants.                  /

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND
<u>OTHER RELIEF</u> AND BRIEF IN SUPPORT THEREOF**

NOW COME, Tiffany Thompson, named Plaintiff herein, and Shanice Bain, Opt-In Plaintiff herein, and hereby move the Court for a Temporary Restraining Order and Preliminary Injunction and Preliminary Injunction,[1] as follows:

    (A)    Requiring Defendants to reinstate all King of Diamonds entertainers who have been terminated from employment since the filing of this action (April 8, 2014) for participating in or supporting this action and/or refusing to agree to arbitrate legal claims encompassed by this action which arose prior to April 8, 2014;

    (B)    Prohibiting Defendants from retaliating or discriminating in any way against Plaintiffs and all persons similarly situated based on involvement in, participation in, or eligibility to participate in this action or any other pursuit of claims under the FLSA and/or the Florida Minimum Wage Law, Fl. Stat. §448.110;

    (C)    Requiring Defendants to transmit to Plaintiffs and all persons similarly situated a written disclaimer to the effect that no individual employee is required to dismiss or otherwise withdraw from this action, or to agree to arbitrate legal claims that arose prior to April 8,

---

[1] This motion is supported by the Declarations of Tiffany Thompson, Shanice Bain, and Harlan S. Miller, and attached Exhibits submitted herewith. Contemporaneous with the filing of this motion, pursuant to Fed. R. Civ. P. 15, Plaintiffs have filed a First Amended and Supplemental Complaint, which sets out claims for unlawful retaliation pursuant to 29 U.S.C.

-1-

        2014, in order to continue employment with the Defendants;

(D)    Requiring Defendants to post a written notice, in a conspicuous location at the King of Diamonds Club, to the effect that no individual employee who was employed at the King of Diamonds as of April 8, 2014, is required to dismiss or otherwise withdraw from this action, nor agree to arbitrate any legal claims which arose prior to April 8, 2014, in order to continue employment with the Defendants;

(E)    Tolling the statute of limitations for "Opt-in" Plaintiffs to join this action until the Court rules on Plaintiffs' upcoming Motion For Conditional Certification,[2]

Plaintiffs also move the court, pursuant to its authority under 29 U.S.C. Sec. 216(b) and Fed. R. Civ. P. 23(d), to afford them the following relief:

(F)    A declaration that any claimed "arbitration agreements" entered in to between King of Diamonds and entertainers since the filing of this action are unenforceable;

(G)    Prohibiting Defendants from attempting to interfere with or prevent similarly situated persons from "opting-in" to this action by way requiring them, on pain of termination of employment, to agree to retroactive, compulsory arbitration of their FLSA and/or Florida state law claims, which accrued prior to April 8, 2014;

(H)    Prohibiting Defendants from communicating to Plaintiffs and all persons similarly situated that they will or may be terminated from employment if they do not agree to arbitrate the pre-existing legal claims encompassed by this action;

(I)    Requiring Defendants to provide to the Court and Plaintiffs' counsel, in advance, any and all contracts, agreements, policies, rules, or regulations which they intend to impose on, or enter in to with

---

[2] In *Clincy et al v. Galardi et al*, 2009 WL 2913208 (N.D. Ga. 2009), a nearly identical case against the same Defendants as in this case, the Court tolled the FLSA statute of limitations, observing as follows: "In the underlying case, individuals similarly situated to the Plaintiffs have likely been induced to refrain from pursuing claims under the FLSA as a result of the discharge of Plaintiffs and by being informed by management of [King of Diamonds] that the discharge resulted from participation in this suit. Therefore, proper grounds exist to toll the statute of limitations for a limited period until similarly situated individuals may be made aware that they may pursue FLSA claims without fear of retaliation or reprisal. The statute of limitations for potential opt-in plaintiffs is tolled until this Court has ruled on Plaintiff's Motion for Conditional Class Certification." *Clincy*, 2009 WL 2913208.

                    entertainers, which contracts, agreements, policies, rules, or regulations would or might affect the legal claims pressed in this case in any material respect;

(J)      Requiring defendants to include in any future written communications to Plaintiffs (and persons similarly situated) the following disclaimer:

> "This communication represents the opinion of King of Diamonds Management. It is unlawful for King of Diamonds, its management, or any other Defendant to retaliate against employees who choose to participate in this case or assist Plaintiffs' counsel in this case."

The grounds supporting this motion are set forth below.

## I     Introduction

This is a proposed FLSA "collective action" brought under 29 U.S.C. 206-07, and a proposed Rule 23 class action under Fl. Stat. §448.110 in which Plaintiffs contend they (and all persons similarly situated) have been denied minimum wages and overtime compensation based on Defendants' universally-applied policy of mischaracterizing them as "independent contractors" and paying them no wages whatever. The case was filed on April 8, 2014. Currently, there are five named Plaintiffs (who have submitted written "consents to sue"), and two "opt-in Plaintiffs (Kiara Scott and Shanice Bain). As discussed herein, immediate court intervention is required to assure the Court's supervisory role over this collective/class action, to maintain the status quo, and to address and remedy certain unlawful actions taken by the Defendants since the filing of the case.

## II    Statement of Facts

Named Plaintiff Tiffany Thompson was employed as an entertainer at King of Diamonds from approximately February of 2010, until she was terminated on April 19, 2014. [Thompson Declaration, ¶2] Opt-in Plaintiff Shanice Bain was employed at King of Diamonds from approximately July of 2009 until April 21, 2014, when she was terminated from employment. [Bain

Declaration, ¶2]

On April 8, 2014, in the context of requesting acknowledgments of service in this action, copies of the Summons, Complaint and other pertinent documents were transmitted by Plaintiffs' attorney (by e-mail)  to Attorney Dean R. Fuchs, who was then representing some but not all of the Defendants in nearly identical litigation pending in the United States District Court for the Northern District of Georgia. [Miller Dec. ¶3, Exh. "1" to Miller Dec].[3]  Not having heard back from Mr. Fuchs, on April 13, 2014, counsel for Plaintiffs again transmitted the same materials to Attorney Fuchs. [Miller Dec. ¶4, Exh. "2" to Miller Dec]. On April 15, 2014, Attorney Fuchs advised that:

> Unfortunately, with your recent assault of civil actions against Gentlemen's Clubs, you have not exactly endeared yourself to my clients. As such, I regret I am without authority to accept or agree to waive service on behalf of the remaining Defendants.

[Miller Dec. ¶5, Exh. "3" to Miller Dec]

On April 19 and 21, Plaintiffs Thompson and Bain were presented with "arbitration agreements" by management at the King of Diamonds, and directed to sign them. [Thompson Dec. ¶4; Bain Dec. ¶6] At the time, King of Diamonds was plainly aware of the existence of this lawsuit, that Plaintiff Thompson was represented by Counsel (the undersigned), and that if Thompson executed the agreement such action would (or might) affect her claims in this lawsuit.

When Thompson explained that she wished to have her attorneys review the documents before deciding whether to "agree", she was told she could not keep a copy of the "agreement", and that she was not allowed to work at King of Diamonds until she signed it. [Thompson Dec. ¶5]. When Bain was presented with the "agreement", she refused to sign because she was unwilling to arbitrate her pre-existing (i.e., FLSA and FMWA) claims. [Bain Dec. ¶8].  When the entertainers refused to sign, they were told they could not work at King of Diamonds any longer, and were

---

[3] On April 29, 2014, a motion for admission *Pro Hac Vice* was filed in this action on behalf of Mr. Fuchs.

directed to leave the establishment. [Thompson Dec. ¶¶5-6;; Bain Dec. ¶¶15-18][4]

When Plaintiffs' counsel was informed of these developments, he immediately raised them with Counsel for Defendants and demanded that the fired Entertainers be immediately reinstated, and that other remedial action be taken at once. [Miller Dec. ¶¶8-9, and Exhibit "4" thereto]  On April 22, 2014, Mr. Fuchs replied, asserting that the presentation of the arbitration agreement to any named or opt-in Plaintiffs was in essence a "mistake":

> the arbitration agreements which were circulated at King of Diamonds were not intended to be presented to those entertainers who had already filed a Complaint or a notice of consent to join.  If what you say in your letter is correct, that directive did not make it all the way down to the Club level, or the directive was misunderstood.

[Miller Dec. ¶10, and Exhibit "5" thereto]  With regards to potential class members other than the currently named and opt-in plaintiffs, Mr. Fuchs asserted that:

> there is nothing improper about having an entertainer who has not filed a claim sign an arbitration agreement, nor is there anything improper about disciplining that entertainer if she refuses to do so.

*Id*.  Notwithstanding the foregoing, Mr. Fuchs' April 22, communication also stated that his clients would immediately reinstate any named or opt-in Plaintiff who was fired for refusing to sign the arbitration "agreement".  *Id*.  This information was communicated to Plaintiff Thompson on or about April 23, 2014.

Rather than following through on this assurance, when Plaintiff Thompson attempted to return to work on April 26, 2014, King of Diamonds management once again presented her with the arbitration "agreement", and told her to sign it. [Thompson Dec. ¶¶13-15] Once again, Thompson refused to sign it. [Thompson Dec. ¶16] Once again, she was told "you can't work here", and was escorted out of the club by a security officer armed with a firearm. [Thompson Dec. ¶¶17-

---

[4] Named Plaintiff Seleta Stanton, was also presented with and told to sign the so-called "arbitration agreement." When she refused, she too was fired. Plaintiffs will submit a Declaration for Plaintiff Stanton to this effect as soon as possible.

-5-

20] Thus, Plaintiff Thompson has been fired not once, but twice, for refusing to arbitrate the FLSA and FMWA claims she is now pressing in this very case.

Defendants have played this course before. On July 31, 2009, entertainers employed by Defendants Galardi South Enterprises, Inc., and Galardi South Enterprise Consulting, Inc. (represented by Attorney Fuchs) filed suit alleging the exact same FLSA minimum wage violations asserted in this action,  *Clincy et al v. Galardi South Enterprises, Inc.,* 2009 W.L. 2913208, Civil Action File No. 1:09-cv-2082-RWS (N.D. Ga. 2009)[Miller Dec. ¶15, and Exhibit "6" thereto] Approximately one month after the Complaint was filed in that action,  Defendants fired certain named and opt-in plaintiffs. On motion for temporary restraining order and preliminary injunction, the Honorable Richard W. Story, found a strong likelihood that Plaintiffs would succeed on their claims for unlawful retaliation under 29 U.S.C. §215(a)(3), ordering Defendants to immediately reinstate the unlawfully fired entertainers, and to undertake a number of other remedial measures. *Id.*

### III      Argument And Citations Of Authority

Based on the foregoing facts, Plaintiffs request the Court to immediately order defendants to immediately reinstate all entertainers who have been fired since this lawsuit was filed for refusing to arbitrate their pre-existing FLSA/FMWA claims set, and to set this  matter down for a prompt hearing, and to take other affirmative steps to ameliorate the effects of Defendants' misconduct, including restricting communications between Defendants (and their Counsel) and all persons employed as entertainers at the King of Diamonds at any time after the filing of  this action.

The obvious purpose animating Defendants' attempted imposition of so-called "arbitration agreements" on  potential class members in this action, and the firings of those entertainers who refused to "agree",   was to dissuade potential class members  from participating in this action, thereby limiting  Defendants' potential liability in this very proceeding. *See, Clincy et al v. Galardi*

*et al, supra* (Exh "6" to Miller Dec), wherein the trial court observed, "Retaliatory termination carries with it the risk that other similarly situated employees will be deterred from protecting their own rights." *See also*, *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)("When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests.")

To counter this purpose, Plaintiffs have submitted a First Amended and Supplemental Complaint in which they allege violations of the FLSA's and the FMWA's anti retaliation provisions, 29 U.S.C. §215(a)(3) and Fl. Stat. §448.110(5). As in *Clincy*, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their retaliation claims, irreparable harm, and that the respective interests of the parties and the public would be best served by the implementation of the requested injunctive relief.

> **A      The Court Should Enter A Temporary Restraining Order And Preliminary Injunction Compelling Reinstatement Of Entertainers Fired After The Filing Of This Lawsuit For Refusing To Arbitrate Their Pre-existing FLSA/FMWA Claims And Other Measures Intended To Remedy Defendants' Unlawful Conduct Since The Filing Of This Action**

To obtain a preliminary injunction, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (4) an injunction would not disserve the public interest.

*Clincy, et al v. Galardi et al, supra*[5], *citing*, *Johnson and Johnson v. Vision Care Inc*, 299 F.3d

---

[5] As noted above, *Clincy* presented the precise issue presented in this motion against the same defendants in this case: the firing of FLSA plaintiffs who filed suit against a strip club. Judge Story promptly ordered the dancers reinstated, and simultaneously tolled the statute of limitations with respect to future "opt-in" plaintiffs.

1242, 1246-47 (11th Cir. 2002).  Preliminary injunctive relief is available to address retaliation against employees who assert legal claims under the FLSA. *Bailey v. Gulfcoast Transp. Inc,* 280 F.3d 1333 (11th Cir. 2002)("For violations of the anti-retaliation provision...the FLSA specifically provides for equitable relief in an employee suit.").  Injunctive relief is likewise available under the FMWA.  Fla. Stat. §448.110.

       **1**       **Likelihood Of Success On The Mertis**

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.* 200 F.3d 1337, 1342-43 (11th Cir. 2000).  The same analysis applies to Plaintiffs' FMWA retaliation claim.  *Payne v. Security & Crime Prevention Service, Inc.*, 2013 WL 5446466 (S.D.Fla.,2013). Under prevailing case law the Plaintiffs are unquestionably likely to prevail on the §215(a)(3) and Fl. Stat. §448.110(5)  claims of unlawful retaliation.

It is undisputed that Defendants  had notice of Plaintiff Thompson's  FLSA and FMWA claims before she was fired  on April 19. Similarly, Defendant knew full well, based on its prior receipt of the collective/class action complaint in this matter that Plaintiff Bain was a potential class member  when she refused to sign the arbitration agreement and was fired on April 21.  Thus, Thompson and Bain  were  indisputably fired for refusing to agree to  arbitrate their preexisting FLSA-FMWA  claims which were  already proceeding in this very case.   Such conduct constitutes a per se violation of §215(a)(3) and Fl. Stat. §448.110(5). *Goldsmith v. Bagby Elevator*, 513 F.3d 1261 (11th Cir. 2008).

In *Goldsmith*, after the Plaintiff filed an EEOC charge of discrimination, the Defendant-Employer thereafter presented him with an "arbitration agreement" which included all "past,

present, and future claims." Goldsmith already had already submitted a then pending EEOC charge (alleging racial discrimination) and refused to agree to arbitrate that claim. As in this case, in response, the Defendant-Employer terminated Plaintiff's employment. Plaintiff claimed that his firing was in retaliation for asserting his rights under Title VII. At trial, Defendant argued that Plaintiff was not fired for asserting his Title VII rights, but was fired instead for "refusing to agree" to submitting that claim to arbitration. The Court of Appeals forcefully rejected that empty distinction, holding that:

> Goldsmith was terminated immediately after and because he refused to relinquish his right to a jury trial for his pending charge...What Bagby Elevator contends was evidence of a legitimate nonretaliatory reason was, in fact, the opposite....The jury was entitled to find....that Bagby Elevator did not have a legitimate reason for requiring Goldsmith to sign an agreement that applied to his pending charge of discrimination.513 F.3d at 1279.[6]

On nearly identical facts, in *Clincy et al v. Galardi, supra* [Exhibit "6" to Miller Dec], the trial court ruled that "This type of action represents a flagrant violation of the FLSA's anti-retaliation provision and therefore Plaintiffs have....demonstrat[ed] a substantial likelihood of success."

---

[6] *See also, Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249 (11th Cir. 2012) ("a jury reasonably could find from the sequence of events that Gate Gourmet decided to unconditionally offer Williams the light-duty silverware wrapper position and would have done so but for the fact that she filed an EEOC charge. Once it learned that she had, Gate Gourmet changed what would have been an unconditional offer into a conditional offer in which she could have the position (with back pay) only if she dropped the charge....When Williams would not drop it, Gate Gourmet rescinded the offer.[FN8 This permissible interpretation of the evidence creates a reasonable inference that the statutorily protected filing of and refusal to settle the EEOC charge caused Gate Gourmet to deny Williams a light-duty position, which is a materially adverse action.] But what Gate Gourmet did was withhold from Williams a light-duty position, which is a benefit that she undisputedly would otherwise have received under company policy, and it allegedly did that solely because of her EEOC charge. Cf. Goldsmith, 513 F.3d at 1279 (concluding that it was retaliatory to terminate an employee for refusing to sign an arbitration agreement that would have covered his pending discrimination charge); *See also, Allen v Suntrust Banks*, 549 F.Supp.2d 1379 (N.D. Ga. 2008) In *Allen*, the Court enjoined the Defendant employer from "contractually requiring any Class Plaintiff to dismiss the instant [FLSA] action as a condition of obtaining any severance benefit". 549 F.Supp.2d at 1384.

### 2       Irreparable Harm

As in *Clincy*, *supra*, Plaintiffs have also satisfied the second requirement for issuance of preliminary injunction by demonstrating that irreparable harm will be suffered absent the injunction. As noted in *Clincy*:

> In *Gresham v. Windrush Partners, LTD*, the Court found that 'irreparable injury may be presumed by the fact of discrimination and violation of fair housing statutes. 730 F.2d 1417, 1423 (11th Cir. 1984). The Court went on to state that 'when a plaintiff who has standing to bring suit shows a substantial likelihood that a defendant has violated specific fair housing statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction...In the case at hand, Plaintiffs have demonstrated that a substantial likelihood exists that Defendants have violated the FLSA, specifically its anti-retaliation provision...The anti-retaliation provision of the FLSA is intended to allow employees to seek vindication of their statutory rights without fear of reprisal. Retaliatory termination also carries with it the risk that other similarly situated employees will be deterred from protecting their own rights. *See, Holt v. Continental Group, Inc*, 708 F.2d 87, 91 (2nd Cir. 1983)(stating that retaliatory discharge carries risk of deterring employees from protecting statutory rights. Furthermore, in order to be a party to an FLSA action, an employee must actively join the suit by providing consent in writing [cit] Irreparable injury might not occur every time a retaliatory discharge takes place, but under the present facts it appears likely that other similarly situated employees of [King of Diamonds] will be deterred from joining the action as a reult of the action taken against Plaintiffs by [King of Diamonds]....***Forcing individuals with claims under the FLSA to choose between pursuing their claims or maintaining employment results in irreparable harm.*** *See, Allen v. Suntrust Bank*, 549 F.Supp.2d 1379 (N.D. Ga. 2008)(finding irreparable harm where employees were put in position of either obtaining a severance package or pursuing their FLSA claims.)

2009 WL 2913208 (N.D. Ga. 9/2/09).

### 3       Balancing of Harms and Public Interest

In *Clincy supra*, and *Allen*, *supra*, the court held, in circumstances indistinguishable from the instant case, that "the harm to Plaintiffs in the absence of an injunction will exceed any harm suffered by Defendants as a result of granting a preliminary injunction" and that "an injunction will

not disserve the public interest." The same result should obtain in this case.

In light of all the circumstances, the Court should immediately enter an Order including the all of the relief requested above in Items "A"-"E" above, *infra,* Pp. 1-3.[7]

>   **B   Defendants' Unilateral Imposition Of So-Called "Arbitration Agreements" Constitute Improper Class Communications, Undermine And Subvert The Court's Authority and Duty to Supervise This Proposed FLSA "Collective" and Rule 23 "Class" Action And Should Be Held Unenforceable.**

In addition to requiring Defendants to immediately reinstate all entertainers who were fired after this lawsuit was filed for refusing to agree to arbitrate their pre-existing FLSA/FMWA claims, Plaintiffs request the court to enter an Order (1) restricting Defendants' (and their attorneys') communications to entertainers in order to safeguard the Court's duty and authority to supervise and management this class litigation, and to ensure the integrity of the process; and (2) holding any arbitration agreements foisted on KOD entertainers after the filing of this action are unenforceable. These steps are absolutely necessary to ensure that Defendants do not misuse their vastly superior bargaining position as employer to dissuade entertainers from exercising free will in determining whether or not to participate in this litigation.

Trial courts are vested with both the duty and the obligation to supervise and manage "collective actions" under 29 U.S.C. §216(b) and "class actions under Fed. R. Civ. P. 23(d). *See, Gulf Oil v. Bernard*, 452 U.S. 89, 100, 100 S.Ct. 2193, 68 L.Ed.2d 693 (1981)(district courts have "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)(district court's power to manage a class action included the power to prohibit a

---

[7] Courts have frequently employed the specified remedies in order to address retaliatory actions and/or other high handed employer tactics. See, Clincy et al v. Galardi et al, 2009 WL 2983208 (N.D. Ga. 2009) (ordering reinstatement of entertainers fired in retaliation for suing over FLSA violations; prohibiting future retaliation; tolling limitations period); Clincy et al v. Galardi et al, 2010 WL 966639 (N.D.Ga. 2010) (requiring disclaimer in written employer communications to potential class members); Williams v. Securitas Svcs, 2:10-cv-07181, Doc 35 (Order of July 13, 2011)(requiring employer to notify employees that arbitration agreements foisted on them after filing of suit were unenforceable).

defendant from making unsupervised, unilateral communications with the plaintiff class); *Jones v. Jeld-Wen, Inc*., 250 F.R.D. 554 (S.D.Fla.,2008) (same); *Hoffman-Laroche, Inc. v Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)(trial courts have "a managerial responsibility to oversee the joinder of additional parties" to assure that an FLSA collective action is run "in and efficient and proper way."). *See generally, Billingsley v. CitiTrends*, 2014 WL 1199501 (11th Cir. 2014) ("To avoid prejudice and impropriety, and to ensure the potential plaintiffs have a fair opportunity to opt-in to a FLSA collective action, the district court has the discretion to 'facilitate notice to potential plaintiffs' and 'broad authority' to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action.")

The goals of the FLSA's "collective action" mechanism—reducing the burdens on plaintiffs by pooling of resources and efficient resolution of commons issues of law fact, *Morgan v. Dollar Stores, Inc*, 551 F.3d 1233, 1264 (11th Cir. 2008)—"depend on employees receiving accurate and timely notice concerning the pendency of the collective action so that they can make informed decisions about whether to participate", *Billingsley*, 2014 WL 1199501, and "cannot be met without the district court managing the process of notification and joiner of additional parties." *Billingsley*, 948 F.Supp.2d at 1299. "Because formal notice to putative FLSA collective members is provided *after* conditional certification has been approved by the district court, pre-certification *ex parte* communications with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety." *Billingsley*, 2014 WL 1199501. "Courts must protect the interests of putative class members by preventing misleading communications, perhaps even disallowing communications if they attempt to undermine Rule 23 by encouraging class members not to join the suit." *Balasanyan v. Nordstrom, Inc*, 2012 WL 760566 (S.D. Ca. 2012), *quoting, In Re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005). *See also, Kleiner, supra*, 758 F.2d at 1202-03 ("A unilateral communications scheme,

moreover, is rife with potential for coercion. "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive...Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.")

In Order to apply these principles to the instant case, Plaintiffs move the Court, pursuant to its authority under 29 U.S.C. Sec. 216(b) and Fed. R. Civ. P. 23(d) to enter an Order restricting Defendants' communications (and those of their attorneys) to potential class members in this action, as follows:

(G) Prohibiting Defendants from attempting to interfere with or prevent similarly situated persons from "opting-in" to this action by way requiring them, on pain of termination of employment, to agree to retroactive, compulsory arbitration of their FLSA and/or Florida state law claims, which accrued prior to April 8, 2014;

(H) Prohibiting Defendants from communicating to Plaintiffs and all persons similarly situated that they will or may be terminated from employment if they do not agree to arbitrate the pre-existing legal claims encompassed by this action;

(I) Requiring Defendants to provide to the Court and Plaintiffs' counsel, in advance, any and all contracts, agreements, policies, rules, or regulations which they intend to impose on, or enter in to with entertainers, which contracts, agreements, policies, rules, or regulations would or might affect the legal claims pressed in this case in any material respect;

(J) Requiring defendants to include in any future written communications to Plaintiffs (and persons similarly situated) the following disclaimer:

> "This communication represents the opinion of King of Diamonds Management. It is unlawful for King of Diamonds, its management, or any other Defendant to retaliate against employees who choose to participate in this case or assist Plaintiffs' counsel in this case.

The requested remedies seeking limitation on the nature of unilateral communications between Defendants and potential class members are plainly appropriate in this case. In assessing proposed communication restrictions, "a two-pronged test must be met before a court may restrict communication. First, a communication must have occurred or be threatened to occur. Id. at 697. Next, the form of communication at issue must be abusive in that "it threatens the proper functioning of the litigation....Communications that have been found to be violative of the principles of Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, ***communications that coerce prospective class members into excluding themselves from the litigation***, and communications that undermine cooperation with or confidence in class counsel. *Jones v. Jeld-Wen, Inc, supra* 250 F.R.D. at 561. Defendants have proven in this case already that they are only too willing to engage in" ***communications that coerce prospective class members into excluding themselves from the litigation."*** The Court's intervention is therefore required in order to deter any similar wrongdoing during the remainder of this litigation.

Plaintiffs also request the Court to conduct an evidentiary hearing and thereafter enter an Order holding that any arbitration agreements foisted on KOD entertainers by KOD management after the firing of this action are unenforceable. Numerous decisions have held that arbitration agreements foisted by employers on employees after the filing of a collective or class action constitute improper class communications and are unenforceable. *See, Billingsley v. CitiTrends*, 2014 WL 1199501 (11th Cir. 2014), aff'g, 948 F.Supp.2d 1287 (M.D. Ala., 2012); *Abdul-Rasheed v. Kabelink Communications, LLC*, 2013 WL 6182321 (M.D. Fl. 2013)(holding arbitration agreement foisted on employees after filing of FLSA action unenforceable); *Belasanyan, supra; In Re Currency Conversion Fee Antitrust Litigation, supra; Williams v. Securitas Sec. Servs*, 2011

U.S. Dist. Lexis (E.D.Pa. 2011); *O'Conner v. Uber Technologies*, 2013 WL 6407583 (N.D. Ca. 2013). The same result should obtain here.

**IV** **Conclusion**

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order setting this matter down for hearing at the earliest practical time and that it thereafter enter an Order granting the relief requested herein.

Respectfully submitted this 2nd day of May, 2014.

/s/ Dana M. Gallup
Dana M. Gallup, Esq.
Florida Bar No. 0949329
Law Offices of Dana M. Gallup
400 Hollywood Boulevard
Presidential Circle
Suite 265 South
Hollywood Fla., 33021
954-894-3035
954-894-8015 (fax)
dgallup@gallup-law.com

/s/ Harlan S. Miller
Harlan S. Miller, Esq.
Georgia Bar No. 560709
Of Counsel
Parks, Chesin & Walbert, P.C.
75 14th Street, 26th Floor
Atlanta, Georgia 30309
(404) 873-8000
(404) 873-8050 (fax)
hmiller@pcwlawfirm.com
*Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on May 2, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      By:__/s/ Dana M. Gallup_____
           DANA M. GALLUP

**SERVICE LIST**
*Jaszmann Espinoza et al v. Galardi South Enterprises, Inc. et al*
CASE NO. 1:14-cv-21244-JLK

| | |
|---|---|
| Dana M. Gallup, Esq.<br>FBN: 0949329<br>Law Offices of Dana M. Gallup, P.A.<br>4000 Hollywood Boulevard<br>Suite 265 South<br>Hollywood, Florida 33021<br>T:  (954) 894-3035<br>F:  (954) 894-8015<br>E-Mail: dgallup@gallup-law.com<br><br>Harlan S. Miller, Esq<br> BN: 560709<br>Parks, Chesin & Walbert, P.C.<br>75 14th Street<br>26th Floor<br>Atlanta, GA 30309<br>T:  (404) 873-8000<br>F:  (404) 873-8050<br>E-Mail:    hmiller@pcwlawfirm.com<br>*(Pro Hac Vice)*<br><br>*Attorneys for Plaintiff(s)*<br><br>CM/ECF | Susan Kastan Murphey, Esq.<br>GBN. 408498<br>Schulten Ward & Turner, LLP<br>260 Peachtree Street, NW,<br>Suite 2700<br>Atlanta, GA 30303<br>T: (404) 688-6800<br>F: (404) 688-6840<br>Email: skm@swtlaw.com<br>*(Pro Hac Vice)*<br><br>Dean Fuchs, Esq.<br>GBN: 279170<br>Schulten Ward & Turner, LLP<br>260 Peachtree Street, NW,<br>Suite 2700<br>Atlanta, GA 30303<br>T:  (404) 688-6800<br>F:  (404) 688-6840<br>E-Mail: drf@swtlaw.com<br>*(Pro Hac Vice)*<br><br>Daniel W. Matlow, Esq.<br>FBN: 384666<br>Daniel W. Matlow, P.A.<br>Emerald Lake Corporate Park<br>3109 Stirling Road, Suite 101<br>Fort Lauderdale, FL 33312<br>T:  (954) 842-2365<br>F:  (954) 337-3101<br>E-mail: dmatlow@danmatlow.com<br><br>*Attorneys for Defendant  Fly Low, Inc.*<br><br>CM/ECF |