UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-21244-CIV-GOODMAN

[CONSENT CASE]

JASZMANN ESPINOZA, et al.,

    Plaintiffs,

v.

GALARDI SOUTH
ENTERPRISES, INC., et al.,

    Defendants.

_____/

## ORDER DENYING MOTION TO COMPEL

THIS CAUSE is before the Court on Plaintiffs' Motion to Compel Defendants' to comply with the Court's August 13, 2014 Order (the "August 13 Order") [ECF No. 97] and for the imposition of attorney's fees as sanctions. [ECF No. 104]. Defendant Fly Low, Inc. d/b/a King of Diamonds ("KOD") opposes the motion and contends that it has complied with the Court's August 13 Order. [ECF No. 106]. Plaintiffs' have filed their reply and the motion is now ripe. [ECF No. 107].  As more fully explained below, the Court finds that KOD has substantially complied with the Court's August 13 Order regarding the production of documents. While the Court is less than satisfied with defendant Teri Galardi's ("Galardi") affidavit, the Court does not find that it warrants the granting of Plaintiffs' motion or the imposition of sanctions. Accordingly, the Court

**denies** the motion to compel and **denies**, *without prejudice*, Plaintiffs' request for attorney's fees.

**I.     BACKGROUND**

Plaintiffs are entertainers who are suing Defendants for, among other things, minimum wage and overtime violations arising from their work at KOD, a strip club owned (at least as of the time the lawsuit was filed) by Defendants. [ECF No. 14].

On August 6, 2014, various media outlets reported that Defendants had sold KOD (i.e., both the real estate and the ongoing business) to a third-party. The Court held a telephonic hearing on August 12, 2014 to discuss the impact of this sale on the case. [ECF No. 93]. At the hearing, defense counsel confirmed that KOD had been sold, but he did not know much else. Accordingly, the Court entered the August 13 Order requiring Defendants to submit the following information:

> 1.     By August 27, 2014, Defendants shall produce to opposing counsel and file with the Court the documents relating to the sale of KOD. For purposes of illustration only, these documents would include, among other things, a bill of sale, a quit claim deed, an asset transfer agreement, etc. If there is a closing binder, then it shall also be produced.
>
> 2.     By August 27, 2014, along with producing and filing the documents noted above, Defendants shall also produce and file an affidavit from a duly authorized representative that explains the relationship of the current Defendants and the potential defendants to KOD.

[ECF No. 97, p. 2]. In response, KOD submitted, under seal, 15 documents related to KOD's sale. [ECF Nos. 102; 103 (sealed)]. KOD also submitted Galardi's affidavit. [ECF No. 101].

Plaintiffs filed the instant motion, contending that Defendants failed to produce all of the Court-ordered documentation of KOD's sale and that Galardi's affidavit fails to comply with the Court's August 13 Order. Plaintiffs contend that the documents Defendants did disclose reveal a strong possibility that the sale of KOD was not a *bona fide* arms-length transaction, but rather a collusive agreement designed to dissipate Defendants' assets and to provide the buyers/potential defendants with a successor liability defense. [ECF No. 104, p. 2]. Plaintiffs want the Court to order Defendants to produce the remaining KOD sale documents and another affidavit. In addition, Plaintiffs request the Court sanction Defendants, pursuant to its inherent powers, and enter a fees award against Defendants for Defendants' entry into a fraudulent sale of KOD, the concealment of KOD's sale, and for non-compliance with the Court's August 13 Order. [*Id.* at pp. 2, 9].

KOD opposes Plaintiffs' requested relief. [ECF No. 106]. It contends that it complied with the Court's August 13 Order because it produced the documents relating to KOD's sale and that the documents Plaintiffs request are either not relevant to this litigation or do not exist. [*Id.* at pp. 3-9]. KOD also contends that Galardi's affidavit fully complies with the Court's August 13 Order. [*Id.* at pp. 10-11].

**II.	DISCUSSION** [1]

Before addressing the merits of Plaintiffs' motion, the Court will first address the underlying theme permeating Plaintiffs' motion -- Plaintiffs' contention that Defendants' sale of KOD is likely tainted with fraud and collusion so that Defendants and the buyers can simultaneously dissipate Defendants' assets and create a successor liability defense for the buyers. Plaintiffs reach this conclusion by focusing on Galardi's false representations in the sale documents that there was no pending litigation. [ECF No. 107, pp. 1-3]. Consequently, Plaintiffs argue that more information is needed to determine the *bona fides* of KOD's sale. The Court understands why Plaintiffs' counsel is trying to use the Court's August 13 Order get to "the bottom" of the KOD sale now: Plaintiffs' counsel wants to make sure there is money to pay any judgment.

In particular, Plaintiffs' counsel is anticipating the following scenario: Plaintiffs obtain a money judgment against Defendants. When Plaintiffs seek to collect, Defendants will say they have no money to pay, despite the $6 million sale of KOD. Plaintiffs will then try to hold the KOD buyers liable for the judgment against Defendants. The KOD buyers will escape liability, relying, in part, on the theory that they had no knowledge of this litigation based on Galardi's representations. [*See* ECF No. 104. p. 2]. Thus, Plaintiffs would ultimately be unable to collect.

---

[1]	The Court **is not** determining whether Plaintiffs would be able to obtain this information in the normal course of discovery. Rather, the Court's focus in *this* Order is solely on whether Defendants complied with the Court's August 13 Order.

There are problems with the underlying theme in Plaintiffs' motion, however.

First, the Court's August 13 Order was not focused on the *bona fides* of KOD's sale. Instead, as the Order makes clear, the Court was focused on identifying the new owners of KOD, as neither defense counsel knew anything about the sale. [ECF No. 97, pp. 1-2]. There is simply nothing in that order regarding any inquiry into whether the sale was *bona fide* or not.

Second, there is nothing, *at this time,* in the record establishing that the sale of KOD was a collusive agreement between the buyers and Defendants. For example, KOD's instant sale price ($6 million) is almost double the amount that Galardi's father bought KOD for in 2002 ($3.15 million).[2] If Defendants and buyers did have a backroom deal, then why would the buyers legally oblige themselves to almost double Defendants' investment?

Third, Plaintiffs' focus on Galardi's representations in the sale documents as the source of their theory is misplaced. To be sure, those representations appear to be blatantly and materially false in light of this lawsuit as well as the other similar lawsuits in this district. *See Vernitta Geter, et al. v. Galardi S. Enters., Inc., et al.,* No. 14-21896-CMA (S.D. Fla. 2014). But Galardi's representations were neither made to the Court nor to

---

[2] *See* http://www.dailybusinessreview.com/id=1202665726329/Miami-HipHop-Strip-Club-Sold-For-6-Million (last visited October 14, 2014).

Plaintiffs. They were made to the *buyers*. Thus, if anyone is aggrieved it would be them.[3] This leads to another problem.

Plaintiffs' concern that the KOD sale might be part of a grand scheme to dissipate Defendants' assets and to allow buyers a successor liability defense is far too premature and tenuous. It is premature because Plaintiffs do not have a judgment against Defendants[4] and this case remains at its beginning stages. It is tenuous because it requires the piling of inference upon inference to reach its conclusion, but each inferred scenario may turn out differently than Plaintiffs predict. Plaintiffs, however, can rest assured that the Court noticed that Mr. Akinyele Adams, a KOD manager, potential defendant, **and part of the buyer's group**, testified at the injunction hearing before this Court regarding this lawsuit. Thus, it seems difficult for Mr. Adams to later contend that he was unaware of this lawsuit.

### A. KOD's Document Production

The first part of Plaintiffs' motion concerns KOD's document production. [ECF No. 104, pp. 3-4]. As Plaintiffs point out, and KOD concedes, KOD did not produce *all of the documents* relating to the sale. [ECF No. 106, pp. 6-9]. Rather, KOD produced 15

---

[3]   Plaintiffs may, of course, pursue these apparent falsehoods in discovery and at trial. If Galardi made material misstatements in her representations concerning the absence of litigation, then Plaintiffs' counsel has ammunition to challenge her veracity.

[4]   The Court is not opining, either way, on whether Plaintiffs will or will not ultimately secure a judgment against Defendants.

6

documents and omitted some other documents which it contends are not relevant or would be unduly burdensome to produce. [*Id.* at p. 6].

The crux of the parties' dispute on this issue is Defendants' interpretation of the Court's August 13 Order. Defendants have interpreted the Order to require production of some, but not all, of the KOD sale documents. In that regard, the Court does not find that interpretation in bad faith or illogical. The August 13 Order does not expressly state that Defendants shall produce *all* documents relating to the sale of KOD -- although that could also be a very plausible interpretation.  Moreover, KOD is correct in noting that a review of the 15 documents it produced shows who participated in the purchase and sale of KOD. Accordingly, the Court finds that Defendants have substantially complied with the Court's Order and denies Plaintiffs' motion to compel Defendants to produce the omitted documents.

The Court, however, will make one final point: KOD's relevance/unduly burdensome discovery type objections to the Court's August 13 Order are inappropriate and rejected. A court order is not a party-propounded discovery request to which parties may interpose discovery-type objections.

**B. Galardi's Affidavit**

As noted above, in the August 13 Order, the Court required Defendants to "produce and file an affidavit from a duly authorized representative that explains the

relationship of the current Defendants and the potential defendants to KOD." [ECF No. 97, p. 2]. In response, Defendants filed Galardi's affidavit, which stated, in relevant part:

> The Order directs that I identify the relationship between [KOD] and the current named defendants in this action, which consist of Galardi South Enterprises, Inc. ("GSE"), Galardi South Enterprises Consulting, Inc. ("GSEC"), Mike Kap, Dennis Williams, and the undersigned. GSE and GSEC are inactive companies, and have no present contractual or operational relationship with [KOD]. The two individual defendants, Kap and Williams, are not now and have not within the past five (5) years been employed by or been under contract with [KOD].
>
> The Order also directs that I identify the relationship of [KOD] with the proposed named defendants in this action, which consist of Akinyele Adam, Kitty & AK Corp., Rick Taylor, EMK Equities, LLC, AQFC, "LLD", AQFC, LLC, Kodrenyc, LLC, Ak "N" Eli, LLC, Elliot Kunstlinger, and Akiv Feinsold. None of those parties have any contractual or business relation with [KOD], except as follows: (1) Ak "N" Eli, LLC owes money to [KOD] pursuant to a promissory note (the "Note") produced herewith; (2) [KOD] has licensed to Ak "N" Eli, LLC and to Kodrenyc, LLC certain trade-name and trade-mark rights belonging to [KOD], pursuant to a license agreement produced herewith; and (3) Elliot Kunstlinger is a guarantor of the Note.

[ECF No. 101, ¶¶ 7, 8]. While Galardi's affidavit is an attempt to comply with the Court's order, it is less than satisfactory for a few reasons.

First, Galardi provides no information regarding *her* relationship to KOD. She was required to do so, as she is a current Defendant. Second, there is nothing in her affidavit regarding the relationship between the current Defendants **and** the potential defendants to KOD. Rather, what Defendants chose to do was to read the August 13 Order in such a way as to separate the current Defendants' relationship to KOD versus the potential defendants' relationship to KOD. In this way, Defendants would not have

to describe the relationship between the current Defendants **and** the potential defendants to KOD.  But the Court's Order does not say what Defendants think it does. Rather, the Court's Order was written in the conjunctive, not the disjunctive, and required Defendants to explain the relationship between current Defendants and potential defendants to KOD, e.g., who sold KOD and to whom.

Despite not finding Defendants' affidavit particularly convincing in terms of fully complying with the Court's August 13 Order, the Court declines to grant Plaintiffs' motion and order Defendants to file another affidavit for a few reasons. First, another affidavit would add little to identifying the parties to the KOD sale transaction. Plaintiffs can decipher from the submitted documents the KOD sale transaction and the relationship between some of the current Defendants and the buyers/potential defendants. Second, the Court is sure Plaintiffs will be seeking these type of answers, whether in written discovery requests or deposition testimony, from the current Defendants.

### C. Attorney's Fees

A court may impose sanctions for litigation misconduct under its inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). A court's inherent power derives from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (internal citation omitted). This inherent

power to impose sanctions, however, "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

In the Eleventh Circuit, the "key to unlocking a court's inherent power [to impose sanctions] is a finding of bad faith." *Barnes v. Dalton*, 158 F. 3d 1212, 1214 (11th Cir. 1998) (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). However, "a conclusory finding of bad faith is not sufficient to withstand appellate review." *In re Porto*, 645 F.3d 1294, 1305 (11th Cir. 2011). When considering possible sanctions under "the court's inherent power, the threshold of bad faith conduct is **at least as high** as the threshold of bad faith conduct for sanctions under 28 U.S.C. § 1927." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (internal citations omitted)(emphasis supplied). Under section 1927 "'[b]ad faith' is the touchstone. Section 1927 is not about mere negligence." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (internal citations omitted).

Here, Plaintiffs request that the Court use its inherent powers to sanction Defendants by entering a fees award against them because Defendants: (1) engaged in fraudulent conduct and/or a collusive agreement to consummate KOD's sale; (2) concealed the sale from the Court, Plaintiffs, and Defendants' own lawyers, thereby disrupting these proceedings; and (3) did not comply with the Court's August 13 Order. [ECF No. 104, pp. 2, 9]. At this time, the Court does not find that any of Plaintiffs' proffered reasons reach the "bad faith" threshold to justify sanctions.

First, as noted above, there is nothing at this time which proves that KOD's sale was fraudulent or the product of a collusive agreement. *Supra,* pp. 4-6.

Next, while Defendants did not openly and voluntarily disclose KOD's sale to Plaintiffs or their counsel, there is no evidence establishing that Defendants were acting in bad faith by intentionally attempting to conceal the transaction. In fact, there is little in the record that suggests Defendants were trying to *conceal* the transaction at all. The hearing was scheduled because the Undersigned read news reports about the sale. This is inconsistent with a scheme to keep the sale secret. To be sure, the sale has slowed down this litigation. But on the record before it, the Court cannot conclude that Defendants acted in bad faith.

Finally, as explained above, the Court does not find that Defendants violated the Court's Order so as to justify the imposition of sanctions under the Court's inherent powers.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to compel is denied. Plaintiffs' request for attorney's fees is denied without prejudice.

**DONE and ORDERED**, in Chambers, in Miami, Florida, October 16, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

11

**<u>Copies furnished to:</u>**
All Counsel of Record