**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 14-21244-CIV-GOODMAN**

**[CONSENT CASE]**

JASZMANN ESPINOZA, et al.,

     Plaintiffs,

v.

GALARDI SOUTH
ENTERPRISES, INC., et al.,

     Defendants.

_____/

**ORDER ON PLAINTIFFS'**
**RENEWED MOTION FOR RULE 23 CLASS CERTIFICATION**
**OF STATE LAW MINIMUM WAGE CLAIMS**

The Court previously denied without prejudice [ECF No. 165] Plaintiffs' Motion for Rule 23 Class Certification [ECF Nos. 33; 34] because the legal and factual landscape on which the motion was based had shifted dramatically since it was first filed. The Court allowed, however, Plaintiffs to file a new motion, incorporating the relevant changes in circumstances if they wished to still pursue a Rule 23 class action for state law minimum wage claims. [ECF No. 165].

Plaintiffs have now filed their Renewed Motion for Rule 23 Class Certification of their Florida state minimum wage claims. [ECF Nos. 178; 179]. Defendants oppose the motion. [ECF No. 186]. Plaintiffs filed a reply in support of their motion. [ECF No. 187]. As explained below, the Court finds that class certification of Plaintiffs' state law claims

is appropriate and, therefore, **grants, in part,** Plaintiffs' motion. The Court, however, does not approve Plaintiffs' proposed class notice. Consistent with the Court's rulings below, counsel shall confer regarding the proposed notice and submit a revised proposed notice for the Court to review within **ten** days of this Order.

## I.      BACKGROUND

Plaintiffs are dancers who are suing Defendants for, among other things, minimum wage and overtime violations arising from their work[1] at Defendant Fly Low, Inc. d/b/a King of Diamonds ("Defendant" or "KOD"), a strip club. [ECF No. 140]. Plaintiffs allege claims under the Fair Labor Standards Act ("FLSA") and Florida law. [*Id.*, at pp. 19-25]. The Court previously granted conditional certification of an FLSA collective action against Defendants. [ECF No. 116]. More than 20 claimants have opted into the collective action. [ECF Nos. 123; 126; 128; 129; 137; 142; 149; 151].

Plaintiffs' instant motion seeks class certification of their state law claims under Federal Rule of Civil Procedure 23. [ECF Nos. 178; 179]. Plaintiffs want to certify a class based on alleged violations of Article X, § 24 of the Florida Constitution and Florida Statute § 448.110. In their motion, Plaintiffs request that the Court: (1) certify their state law claims classes, and (2) approve their proposed notice to the putative class.

---

[1]      The Court understands why Plaintiffs contend that they "worked" at KOD, while Defendants contend that Plaintiffs "performed" at KOD. For purposes of this Order, the Court uses those words interchangeably. Put another way, by using the word "perform" or "work," the Court is not implying either way whether Plaintiffs were employees (who "worked") or independent contractors (who "performed").

Defendants oppose the motion and contend that no class should be certified. [ECF No. 186]. Defendants also contend that if the Court certifies the classes, then the Court should not approve Plaintiffs' proposed notice because it is confusing and misleading. [*Id.* at pp. 15-17].

In their reply, Plaintiffs agree that some modifications to the proposed notice should be made and have offered to confer with Defendants' counsel regarding these modifications. [ECF No. 179, pp. 14-15].

## II.   LEGAL STANDARD FOR RULE 23 CLASS CERTIFICATION

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule [23] -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). In view of the broad discretion a court has in certifying a class, any such decision must rest on a "rigorous analysis" that Rule 23's requirements are met. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citing *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009)).

While the court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (citing *Dukes,* 131 S. Ct. at 2552 n. 6). Rather,

"[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

A party seeking to certify a Rule 23 class must first demonstrate the following four requirements under Rule 23(a):

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

These requirements are referred to as numerosity, commonality, typicality, and adequacy. If the party seeking class certification fails to demonstrate any of these requirements, then the case may not continue as a class action. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (internal citations omitted).

In addition to meeting Rule 23(a)'s four requirements, the party seeking class certification must prove that one of Rule 23(b)'s requirements is met. *Vega,* 564 F.3d at 1265. Here, Plaintiffs are seeking certification under Rule 23(b)(3). That means they must show "predominance" and "superiority." *Manno v. Healthcare Revenue Recovery*

*Grp., LLC*, 289 F.R.D. 674, 689 (S.D. Fla. 2013). That is that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Vega*, 564 F.3d at 1265.

## III.    ANALYSIS

Because a Rule 23 motion requires a "rigorous analysis," there are a plethora of issues that must be resolved here. First, the Court will examine whether it has jurisdiction over the state law claims. Second, the Court will review the proposed class definitions. Third, the Court will analyze whether Rule 23(a)'s requirements have been met. Fourth, the Court will determine whether Plaintiffs' have met Rule 23(b)(3)'s requirements. Fifth, the Court will examine the proposed class notice. Finally, the Court will review Plaintiffs' request for Defendants to produce a master list of dancers' information.

Before delving into the required analysis, the Court makes the following preliminary observation: this is not the first dancer-wage-class-action-case against a strip club (and it may not be the last). Indeed, the Court's cursory research has uncovered no less than 5 other federal courts that have faced the very same issues this Court is faced with now, i.e., Rule 23 class certification of dancers' state law claims against a strip club. *See Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 CIV. 6530 PKC RLE, 2014 WL 4980380 (S.D.N.Y. Oct. 6, 2014); *In re Penthouse Exec. Club Comp. Litig.*, No. 10

CIV. 1145 KMW, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014); *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 5472165 (N.D. W. Va. Nov. 9, 2012); *Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*, No. EDCV 09-01316-VAP, 2012 WL 4755682 (C.D. Cal. Oct. 5, 2012); *Hart v. Rick's Cabaret Int'l Inc.*, No. 09 CIV 3043 JGK, 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010).

Interestingly enough, in every single one of these cases, the dancers' state wage law claims Rule 23 class was either certified or approved in the class settlement context. In fact, Defendants have not cited to any decision with different results -- denying the Rule 23 class certification motion. And the Court has not been able to uncover one either. To be sure, the above cases are not binding on this Court. But they are persuasive authority.

A. **The Court's Jurisdiction Over the State Law Claims**

"Federal courts have an independent obligation to police the constitutional and statutory limits on our jurisdiction." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) (internal citation omitted). While this maxim does not necessarily apply to a court's exercise of its supplemental jurisdiction, the more cautious and prudent approach is for courts to do so. *German v. Eslinger*, No. 608CV-845-ORL-22GJK, 2008 WL 2915071, at *1 n. 1. (M.D. Fla. July 25, 2008) (internal citation omitted).  Here, there is no dispute that the Court has jurisdiction over Plaintiffs' FLSA claims. *See* 28 U.S.C. § 1331. The issue is whether the Court should exercise

supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. In that regard, neither Plaintiffs nor Defendants object to the Court exercising supplemental jurisdiction over the state law claims. The Court has nevertheless conducted an independent review of 28 U.S.C. § 1367(c)'s factors.

The Eleventh Circuit has articulated a two-fold inquiry to determine whether a jurisdictional basis exists to support a plaintiff's state law claim in federal court. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). First, a court must decide whether it has the power to hear the state law claims. Second, a court must decide in its discretion if it will retain jurisdiction over the state law claims. *Id.* (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, (1966)); 28 U.S.C. §§ 1367(a) and (c).

This Court clearly has the power to hear the state law claims under 28 U.S.C. § 1367(a) as Plaintiffs' claims arise from the same alleged "employment" relationship with Defendants and "share a common nucleus of operative fact[s] with the FLSA claims." *Vitola v. Paramount Automated Food Servs., Inc.*, No. 08-61849-CIV, 2009 WL 3242011, at *5 (S.D. Fla. Oct. 6, 2009).

Next, the Court turns to the factors enumerated in 28 U.S.C. § 1367(c). First, the Court has not dismissed Plaintiffs' FLSA claims. As such, this is not a situation where only the state law claims remain pending before the Court. Second, the Court finds that the state law claims do not predominate over Plaintiffs' FLSA claims. Third, at this time,

the Court cannot say that the state law claims raise novel or complex state law issues.[2]

Finally, there is no exceptional circumstance here and no compelling reasons for the

Court to decline to exercise jurisdiction. Accordingly, the Court will exercise

supplemental jurisdiction over the state law claims. *Vitola*, 2009 WL 3242011, at *5

(exercising supplemental jurisdiction over Article X, § 24, Florida Constitution claim in

FLSA case); *see also Ruffin*, 2012 WL 5472165, at *2-5 (rejecting defendants' objection and

exercising supplemental jurisdiction over dancers' state law claims); *accord Hart*, 2010

WL 5297221, at *8.

### B.  <u>The Proposed Class Definitions</u>

Before considering Rule 23's requirements, the Court must determine whether

the proposed classes have been adequately defined and clearly ascertainable.  *Little v. T-

Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) ("[a] plaintiff seeking to represent a

proposed class must establish that the proposed class is "adequately defined and clearly

ascertainable") (internal citations omitted); *see also C-Mart, Inc. v. Metro. Life Ins. Co.*, 299

F.R.D. 679, 687 (S.D. Fla. 2014). A class is adequately defined and ascertainable where

"[t]he description of the class [is] sufficiently definite to enable the court to determine if

a particular individual is a member of the proposed class. The description of the class is

---

[2]      *See Kwasnik v. Charlee Family Care Servs. of Cent. Florida, Inc.*, No. 608-CV-926-
ORL-31KRS, 2009 WL 1607809, at *6 (M.D. Fla. June 9, 2009) (declining to exercise
supplemental jurisdiction over § 448.110 claim because Court found pre-suit
requirement was novel complex issue of state law). The Court does not decide this issue
because no parry has raised it.

sufficiently definite if any member of the proposed class would have the requisite standing to sue on his own behalf or in his own right." *Pottinger v. City of Miami*, 720 F. Supp. 955, 957 (S.D. Fla. 1989) (internal citations and quotations omitted).

Here, in proposing their class definitions, Plaintiffs have not been entirely consistent. In their motion, Plaintiffs proposed the following:

[Article X, § 24 Florida Constitution Class
(the "Florida Constitution Class")]

All persons employed as entertainers at the King of Diamonds "Gentlemen's Club" at any time between **April 9, 2009** and July 19, 2014, specifically excluding all entertainers who have "opted-in" to the case styled Geter et al. v Galardi South Enterprises, Inc., et al, Civil Action File No. 1:14-cv-219896-CMA. See, Article X, Section 24(e) ("Actions to enforce this amendment shall be subject to a statute of limitations of four years, or in the case of willful violations, five years["]).

[§ 448.110, Fla. Stat. Class (the "§ 448.110 Class")]

All persons employed as entertainers at the King of Diamonds "Gentlemen's Club" in Miami, Florida, at any time between March 24, 2009 and July 19, 2014, specifically excluding all entertainers who have "opted-in" to the case styled Geter et al. v Galardi South Enterprises, Inc., et al, Civil Action File No. 1:14-cv-219896-CMA (suit filed on April 8, 2014, plus fifteen days in which claims were tolled after Plaintiff Espinoza submitted, on behalf of herself and all persons similarly situated a pre-suit notice of state law wage claims).

[ECF No. 178, pp. 1-2 (emphasis added)]. In their attached proposed notice, however, Plaintiffs stated the following:

If you worked as a Dancer/Entertainer at the Kings of Diamonds at any time between **March 24, 2009** and July 19, 2014, and you do not request to be excluded from the case, you are automatically a member of the class

and you may be entitled to recover minimum wage damages, liquidated damages, overtime, and other amounts in this action under the Florida Constitution and/or the Florida Minimum Wage Act.

[ECF No. 179-6, p. 3 (emphasis added)].

Thus, in their motion Plaintiffs propose two separate class dates: April 9, 2009 for the Florida Constitution Class and March 24, 2009 for the § 448.110 Class. This 15-day difference makes sense because it is based on § 448.110(6)(b)'s 15-day pre-suit notice tolling period. Plaintiffs, however, seek an omnibus March 24, 2009 date in their proposed notice for both classes. Plaintiffs do not explain this inconsistency. Because it is not entirely clear which date Plaintiffs are seeking and because the Court is certifying the classes, counsel shall confer regarding this issue in submitting a joint proposed notice.[3] If counsel are unable to agree on this point, then they shall notify the Court.

Setting aside this minor date inconsistency, Defendants present two objections to the proposed class definitions.

First, Defendants contend that "Plaintiffs' separate class definitions presume the existence of a cause of action to recover minimum wages under Article X, Sec. 24(e), separate and apart from a cause of action under the FMWA, Fla. Stat. § 448.110." [ECF No. 186, p. 4]. Defendants follow this sentence with a footnote about the pre-suit notice

---

[3]     The Court can think of myriad solutions to this issue. For instance, the notice may advise putative class members of the two class dates. Or, Plaintiffs may seek to forego this 15-day tolling period to have a more uniform, and cleaner, class date. The Court is not imposing any of these solutions on the parties.

being defective, but present no argument explaining why that is the case and what consequences flow from this presumption. [*See Id.*, at p. 4 n. 1]. Neither did Defendants move to dismiss any of Plaintiffs' causes of action. Instead, they answered.

As noted, a Rule 23 analysis "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc.*, 133 S. Ct. at 1194 (citing *Dukes*, 131 S. Ct. at 2552 n. 6). Accordingly, this Court cannot undertake a *sua sponte* merits analysis of the viability of the state law claims, where no party has filed an appropriate motion seeking such a determination.[4]

Second, Defendants argue that the definition is "unfair" and "arbitrary" in its exclusion of the plaintiffs in *Geter v. Galardi S. Enter., Inc.*[5] [ECF No. 186, pp. 5-6]. The plaintiffs in *Geter* are also entertainers who work or did work for Defendants around the same period of time and who filed a similar lawsuit against Defendants in the

---

[4]     Moreover, the Court cannot definitively say that the law is clear on this issue. The Court's cursory research shows that there is no on-point Florida Supreme Court case and that district courts in this circuit are split on the issue. *Compare Bates v. Smuggler's Enters., Inc.*, No. 210-CV-136-FTM-29DNF, 2010 WL 3293347, at *4 (M.D. Fla. Aug. 19, 2010) (finding that Article X, § 24 of the Florida Constitution created a separate cause of action apart from § 448.110), *with Garcia-Celestino v. Ruiz Harveseting, Inc.*, No. 2:10-CV-542-FTM-38, 2013 WL 3816730, at *17 (M.D. Fla. July 22, 2013) (rejecting *Bates* and stating that "construing the FMWA [i.e., § 448.110] and the Amendment [§ 24], as the *Bates* court did, to provide separate causes of action—one with a notice requirement and one without—ignores the purpose of the FMWA as an implementing legislation to the Amendment.").

[5]     Case No. 14-21896-CIV (S.D. Fla. 2014) (FLSA collective action case filed by a second group of entertainers against the same Defendants in this District in close proximity to the current action, which features many overlapping issues).

Southern District of Florida in 2014. Case No. 14-21896-CIV (S.D. Fla. 2014). The *Geter* plaintiffs would all very likely be encompassed by the class definitions proposed by Plaintiffs without the explicit carve-out.

The *Geter* plaintiffs filed their lawsuit exclusively as a federal collective action under the FLSA and, on the first day of the jury trial in that case, the parties reached a settlement agreement on those claims. Case No. 14-21896-CIV, ECF No. 305 (S.D. Fla. July 15, 2015). The district court approved the settlement in accordance with *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982) on August 11, 2015. *Geter,* Case No. 14-21896-CIV, ECF No. 313 (S.D. Fla. Aug. 11, 2015).

Defendants argue that excluding the *Geter* plaintiffs from the class definition in this case is arbitrary and unfair because there is no evidence that the *Geter* plaintiffs knowingly, voluntarily, or intentionally relinquished any state-based wage and hour claims when they chose to opt-in to the *Geter* FLSA collective action. [ECF No. 186, pp. 5-6]. To support this argument, Defendants refer to *Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.,* in which a district court denied certification, in part, because the class definition was "arbitrary and unfair in that there [was] no legal or factual basis for using [a specific threshold] to distinguish between hospitals that are in the class and those that are not." 238 F.R.D. 679, 689-91 (S.D. Fla. 2006).

In *Boca Raton Community Hospital,* the plaintiffs were unable to provide reasoned support for the threshold that separated class members from non-class members, and so

12

the court found that the definition was "not workable or practicable because it [was] not grounded in fact or law and [did] not rationally separate hospitals that allegedly received or transported stolen outlier funds from those that did not." *Id.* at 691. While Defendants claim the outright exclusion of *Geter* plaintiffs is not sufficiently "rational," the Court disagrees.

As noted above, the *Geter* plaintiffs have all settled their federal wage claims in the separate litigation. In the context of the Americans with Disabilities Act, the Eleventh Circuit held that "plaintiffs may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action." *Jang v. United Tech. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). To allow plaintiffs to do so would violate the basic tenets of *res judicata*. The same would potentially apply in this context if the Court were to allow the *Geter* plaintiffs to settle their federal wage claims in one action (an action in which the plaintiffs forewent the opportunity to also pursue state wage claims), but then subsequently recover for violations of state wage laws on the same factual predicate in this separate action. Both cases would arise "from the same nucleus of operative fact" and thus violate the principle of *res judicata*. *See Jang*, 206 F.3d at 1149 (citing *Israel Discount Bank, Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992)).

Accordingly, there is nothing "arbitrary" or unfair about Plaintiffs' decision to specifically exclude the opt-in plaintiffs in the *Geter* action.

Notwithstanding Defendants' objections to the proposed class definitions, the Court has undertaken an independent review of the proposed Rule 23 classes. The Court finds that Plaintiffs' proposed classes are ascertainable and adequately defined (setting aside the minor date inconsistency to be resolved before the notice is issued). *See, e.g., Ruffin*, 2012 WL 5472165, at *11 (certifying class of "all persons who, during the period of March 8, 2006 and continuing through the entry of judgment in this case, performed as an entertainer at one or more of Defendants' three exotic dance clubs in West Virginia"); *Hart*, 2010 WL 5297221, at *5, *8 (certifying the following class "[a]ll persons who worked at Rick's New York or were employed by Defendant Rick's Cabaret International Inc., RCI Entertainment (New York) Inc. and/or Peregrine Enterprises, Inc. in the state of New York as 'entertainers' at any time six years prior to the filing of the Complaint to the entry of judgment in this case").

### C. Rule 23(a)'s Requirements

Each of the following four requirements under Rule 23(a) must be satisfied: numerosity; typicality; commonality; and adequacy.

#### 1. *Numerosity*

To establish numerosity, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." *See Vega*, 564 F.3d at 1266–67 (quoting Fed. R. Civ. P. 23(a)(1)). Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Vega*, 564 F.3d at 1267 (internal

citations omitted). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.* (emphasis in original). As one court has noted, "though mere numbers are not dispositive, the general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Manno,* 289 F.R.D. at 684 (citing *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986); *Kuehn v. Cadle Co.,* 245 F.R.D. 545, 548 (M.D. Fla. 2007)).

Here, to support a numerosity finding, Plaintiffs cite to several sources, including: (1) named Plaintiff Tiffany Thompson's statement in her affidavit that there are 500 or so dancers at KOD [ECF No. 34-1, p. 42]; (2) the testimony of KOD's general manager, Akinyele Adams, at an evidentiary hearing that on any *given week* KOD could have 300 dancers working. [ECF No. 78, p. 38]; and (3) KOD's unqualified admission that "[t]he number of entertainers who have performed at KOD since April 9, 2009 is greater than 300." [ECF No. 179-2, p. 15].

The Court finds that the numerosity requirement is met, regardless of whether the number is Adams' 300 or Thompson's 500. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"); *Collins v. Erin Capital Mgmt., LLC,* 290 F.R.D. 689, 694 (S.D. Fla. 2013) (plaintiff's preliminary showing of 48 class members was sufficient to meet

numerosity requirement); *Ruffin,* 2012 WL 5472165, at *6 (157 dancers was sufficient to meet numerosity requirement).

Defendants present additional arguments concerning numerosity, but they all are based on pure conjecture and do not necessarily apply to numerosity *per se.* For instance, Defendants argue that there is no showing that the 300 dancers are eligible to participate as part of the Florida Constitutional Class, the § 448.110 Class, or both. However, the class definition encompasses all entertainers from the relevant timeframe in which Defendants admit there were at least three hundred dancers. This clearly satisfies numerosity despite Defendants' contrary argument.

Defendants make other statements about numerosity which are not applicable to this element of a class action: "Plaintiffs also offer no evidence regarding the geographic diversity of the class members, the size of each Plaintiff's claim, the inconvenience of trying individual lawsuits, or the ability or feasibility of the individual class members to institute individual lawsuits." None of these arguments goes to the subject of *numerosity*, which requires a plaintiff to show that "the class is so ***numerous*** that joinder of all members is impracticable." *See Vega,* 564 F.3d at 1266–67 (emphasis added) (quoting Fed. R. Civ. P. 23(a)(1)). Clearly, these arguments are not applicable here.

Defendants' other argument that "potential plaintiffs could have, but did not, opt in to the Plaintiffs' FLSA collective action should be taken as a strong indication that such dancers have no interest in pursuing state law wage and hour claims either," is

16

also not persuasive. Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Vega*, 564 F.3d at 1267 (internal citations omitted). In this action, more than 20 plaintiffs have opted into the FLSA collective action. [ECF Nos. 123; 126; 128; 129; 137; 142; 149; 151]. While certainly less than 300, this level of participation is evidence of some interest to *actively* participate in a case. Because Rule 23 class actions do not require parties to opt-in (only opt-out), the Court cannot say for certain that only those 20 claimants will seek to recover on the state law claims. What the Court *can* determine at this point though, based on Defendants' own admissions, is that there are at least 300 potential class members, which satisfies numerosity.

### 2. *Commonality*

"The commonality requirement demands only that there be 'questions of law or fact common to the class.'" *Vega*, 564 F.3d at 1268 (quoting Fed. R. Civ. P. 23(a)(2)). Commonality "does not require that all the questions of law and fact raised by the dispute be common," or that the common questions of law or fact "predominate" over individual issues. *Id.* (quoting *Cox*, 784 F.2d at 1557). Stated another way, "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," **and** the plaintiffs' common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at 2551 (internal quotations and citation omitted).

Here, as Defendants concede [ECF No. 68, p. 6], the commonality requirement is met because the issue of whether Defendants treated all dancers as independent contractors is common to all the putative class members. *See Ruffin*, 2012 WL 5472165, at *7 (finding commonality met in similar circumstance); *Hart*, 2010 WL 5297221, at *6 (finding that commonality requirement was met where one issue was "the propriety of the defendants' policy of characterizing entertainers as independent contractors, rather than employees").

### 3.  *Typicality*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *Manno,* 289 F.R.D. at 686 (quoting Fed. R. Civ. P. 23(a)(3)). The "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado–Steiman v. Bush,* 221 F.3d 1266, 1278–79 (11th Cir. 2000)). That nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault,* 692

F.3d at 1216 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.

1984)).

Here, like with commonality, the typicality requirement is met because Plaintiffs'

allegation that their mis-categorization as independent contractors -- the central issue

that gives rise to all of their claims -- was pursuant to a blanket policy that applied to all

members of the putative class. Thus, Plaintiffs' claims "arise from the same course of

conduct as that of the putative class members, and the same legal theory underlies the

claims of each." *Ruffin*, 2012 WL 5472165, at *8 (finding typicality met); *accord Hart*, 2010

WL 5297221, at *6.

Defendants concede the above point (i.e., the central independent contractor

categorization issue). But they nevertheless raise two main arguments against finding

that the typicality requirement is met. The Court will address each of their arguments.

First, Defendants note that "several" named Plaintiffs also have retaliation

claims, which they contend means the typicality requirement is not met. [ECF No. 186,

p. 9]. There are, in fact, only two named Plaintiffs who have potential retaliation claims,

Seleta Stanton and Thompson. [ECF No. 116]. Typicality does not require that the class

member's claim be identical. Accordingly, the Court does not find that two plaintiffs

with potential retaliation claims to be sufficient to find that the typicality requirement

has not been met.

Second, Defendants contend that it is impossible to know which of the named Plaintiffs fall into which proposed class, the Florida Constitution Class or the § 448.110 Class. [ECF No. 186, pp. 9-10]. The Court does not find this to be a viable argument because, as noted, typicality rests on whether "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Ault*, 692 F.3d at 1216 (citations omitted). Defendants' argument focuses on the completely separate and unrelated issue of which class a named Plaintiff falls into. Indeed, Defendants cite to no legal authority to support this argument. In any event, the Court notes that in the amended complaint all the named Plaintiffs asserted causes of action under Article X, § 24 of the Florida Constitution **and** § 448.110. [*See* ECF No. 140, pp. 37-38].

### 4.  *Adequacy*

To satisfy Rule 23(a)(4)'s adequacy requirement, the named Plaintiffs and their counsel must demonstrate that they will adequately protect the interests of the putative class. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between [Plaintiffs or their attorneys] and the class; and (2) whether [they and their lawyers] will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citing *Valley Drug Co.*, 350 F.3d at 1189).

Here, Defendants concede that that the adequacy of representation requirement is met. [ECF No. 186, p. 10].[6] Despite this commendable concession, the Court has conducted an independent review of whether this requirement is met. The Court finds that the named Plaintiffs and their counsel will adequately represent both putative classes in this case for the following reasons.

First, the named Plaintiffs and the putative class members seek to hold Defendants liable for allegedly mis-categorizing them as independent contractors. The claims and defenses applicable to the named Plaintiffs and the classes appear to be substantially the same and there is no antagonism between the named Plaintiffs' interests and those of the putative class members. In other words, the named Plaintiffs share common interests with the putative class members and they generally seek the same type of relief for themselves as they seek for the class. *See, e.g., Pottinger,* 720 F. Supp. at 959; *Hart,* 2010 WL 5297221, at *6.

Second, as for class counsel, because Plaintiffs' counsel primarily practices out of Georgia, this Court does not have the benefit of prior experience with Plaintiffs' counsel and his handling of a class action case in this district, as it does in other cases before it. As such, the Court has undertaken a thorough review of lead counsel's affidavit and

---

[6]     Defendants note, however, that if the Court rejected the class definition excluding the *Geter* plaintiffs, then the adequacy of Plaintiffs' counsel to represent those parties would be questionable. [ECF No. 186, pp. 10-11]. Because the Court accepts Plaintiffs' class definition that excludes the *Geter* plaintiffs, the Undersigned need not address this potential issue.

many of the similar cases in which he has been counsel. *See, e.g.,* [ECF No. 34-2]; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1366 (11th Cir. 2005); *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (FLSA collective action); *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 251 (11th Cir. 1997) (FLSA action); *Kreher v. City of Atlanta, Ga.*, No. 1:04-CV-2651-WSD, 2006 WL 739572, (N.D. Ga. Mar. 20, 2006) (certifying FLSA collective action). After considering lead counsel's qualifications and experience, the Court finds him sufficiently adept and able to handle this class action litigation.

### D. Rule 23(b)(3)'s Requirements

"In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little*, 691 F.3d at 1304; *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). In this case, Plaintiffs move under Rule 23(b)(3). That rule "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'" *Little*, 691 F.3d at 1304 (quoting Rule 23(b)(3)) (emphasis in original). "These are commonly referred to as the predominance and superiority requirements." *Manno*, 289 F.R.D. at 688-89 (internal citation omitted).

### 1. *Predominance*

To satisfy the predominance requirement, a plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Predominance does not require that "all the questions of law and fact raised by the dispute be common." *Cox*, 784 F.2d at 1557. If the liability issue is common to the class, then common questions predominate over individual questions. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987).

Here, there is no real dispute that the liability issue is common to the class, i.e., the propriety of Defendants' blanket categorization of the class members as independent contractors. Defendants argue that notwithstanding that the liability issue is common, the predominance requirement is not met because of the myriad factual issues that must be resolved to determine each dancer's damages. In particular, Defendants' argue that class members will, among other things, have worked different hours per week, including a distinction of working more or less than 40 hours, and made different amounts of money. [ECF No. 186, pp. 12-13]. Plaintiffs brush off this argument by stating that differences in damages is not a legally sufficient ground to not find predominance. [ECF No. 74, p. 3].

23

To the extent that Plaintiffs' argument is that differences in damages among class members *can never* be a sufficient legal ground to find that the predominance requirement is not met, the Court rejects that argument. The law is far more nuanced. To be sure, in general, the Court should be focused on liability issues, and the presence of individualized damages issues does not necessarily prevent a finding that the common issues in the case predominate. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003). But that does not mean that is *always* the case. Rather, as the Eleventh Circuit has said, individualized damages issues will *seldom* upset a case otherwise suited for class treatment:

> It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification. *Of course, there are also extreme cases in which computation of each individual's damages will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable[,] but we emphasize that such cases rarely, if ever, come along.*

*Owner–Operator Ind. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) (internal citations omitted) (emphasis added).

Here, Defendants have raised some valid arguments about why individual damages calculations may prove difficult in this case. The problem for Defendants is that they have not sufficiently shown that these damages "will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable[.]" *Id.* And the Court does not find that, at this time, these damages calculations will prove particularly onerous. Two reasons support the Court's decision.

24

First, multiple district courts have been able to determine the amount of damages in similar cases, i.e., dancer state law class actions. Indeed, to date, it appears that no less than three district courts have approved class settlements of state law claims brought by dancers. *See, e.g., Flynn*, 2014 WL 4980380; *In re Penthouse Executive Club Comp. Litig.*, 2014 WL 185628; *Trauth*, 2012 WL 4755682. The fact that three district courts were able to approve a damages calculations severely undermines Defendants' argument that damages cannot be easily calculated.

Second, as the *Hart* court noted, if individual damage calculations prove necessary and cannot be easily managed, then this Court, which has a continuing obligation to monitor class actions, may decertify the class if necessary. *Hart*, 2010 WL 5297221, at *7; *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("the district court retains the ability, and perhaps even a duty, to alter or amend a certification decision," as circumstances change).

## 2. *Superiority*

The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (internal citation omitted). In this vein, "the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the

25

more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs'
claims, both relative to other forms of litigation such as joinder or consolidation, and in
absolute terms of manageability[.]" *Id.* at 1184 (internal citations and alterations
omitted).

In deciding superiority, a court must consider at least some of the factors set
forth in Rule 23(b)(3), including: "the class members' interests in individually
controlling the prosecution or defense of separate actions"; "the extent and nature of
any litigation concerning the controversy already begun by or against class members";
"the desirability or undesirability of concentrating the litigation of the claims in the
particular forum"; and "the likely difficulties in managing a class action." *See Vega,* 564
F.3d at 1278 n. 19 ("a complete failure to address these factors or any other pertinent
consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion").

Here, Defendants assert the same individual damages argument they raise
regarding the predominance requirement. [ECF No. 186, pp. 11-13]. But "the specter of
individual damages trials bears more directly on predominance than superiority."
*Manno,* 289 F.R.D. at 692 n. 9 (citing Newberg on Class Actions § 4:54 (2012)). In any
event, the Court rejects this argument for the same reasons stated above.

Regarding Rule 23(b)(3)'s superiority factors inquiry, the Court finds the
following (which Defendants concede):

First, given the cost of litigation relative to any likely recovery, "it [is] unlikely that the majority of putative class members would have any interest in maintaining a separate action." *Ruffin*, 2012 WL 5472165, at *11.

Second, while there was another litigation with potential class members pending in this district, the plaintiffs there alleged only FLSA violations. *See Geter, Case* No. 14-21896-CMA, ECF No. 1 (S.D. Fla. May 22, 2014). The *Geter* plaintiffs did not allege any State Law Claims, and the case has settled.

Third, litigation of this case in this forum is desirable because it is where KOD is located and does business, where the alleged unlawful acts occurred, and where a large number of putative class members presumably reside. *Ruffin,* 2012 WL 5472165, at *11.

Finally, it is unlikely that any difficulties will be encountered in the management of this case, other than typical issues of the language of the notice to the putative class members.

Accordingly, having considered all of Rule 23(b)(3)'s superiority factors, the Court finds that "the class action vehicle is superior in the instant matter." *C-Mart, Inc.,* 299 F.R.D. at 692.

### 3.  *Rule 23(b)(3) and Geter Plaintiffs*

In addition to the above arguments, Defendants secondarily raise the potential complication of the *Geter* litigation in the context of predominance. [ECF No. 186, pp. 13-15]. Once again, however, Defendants' argument of potential conflicts and

complications only comes into play if the Court were to reject Plaintiffs' class definition that excludes the *Geter* plaintiffs from the class. If the Court were to reject that portion of the class definition, then there would certainly be problems concerning overlapping representation of the *Geter* plaintiffs by two separate attorneys for different portions of their claims. As noted above, though, Defendants' arguments to reject the class definition are without merit. Therefore, the exclusion of the *Geter* plaintiffs from the state law class claims resolves any potential issues regarding the Rule 23(b)(3) factors.

### E.  **Plaintiffs' Proposed Notice**

Plaintiffs' proposed notice includes several references to the FLSA and creates confusion. [*See* ECF No. 179-6, p. 1]. Before the Court approves a Notice for this class action, those confusing references must be removed. In addition, it is apparent that the parties disagree concerning the blanket statement about the effect of the arbitration agreements that Defendants mandated dancers to sign following the filing of this lawsuit. Specifically, the language in the proposed notice states:

> If you began working at KOD before April 8, 2014 and signed a mandatory arbitration agreement after that date because you believed you would be fired or terminated if you did not sign it, then you may participate in the case even though you signed the mandatory arbitration agreement.

[*Id.*].

On December 31, 2015, the Undersigned entered an Order rejecting Defendants' motion to enforce the referenced arbitration agreements against four opt-in claimants in

the FLSA collective action. [ECF No. 191]. In that Order, the Undersigned concluded that Defendants' arbitration policy was conducted with the clear "purpose of undermining this litigation. [*Id.*, at p. 15]. The Undersigned refused to enforce the agreements with regard to four specific plaintiffs. But the Undersigned *did not* enter a blanket ruling concerning the enforcement of *all* arbitration agreements though, as that issue has not been presented to the Court.

Accordingly, the Undersigned finds that the language in the proposed Notice is too broad, as currently written. While it is certainly true that the Court's perspective of Defendants' arbitration policy is decidedly negative on account of Defendants' stated intent, it remains to be decided whether other arbitration agreements signed after the filing of this lawsuit are unenforceable.

In evaluating how to proceed on this issue, the Court notes the following. First, this issue is not properly before the Court because no party has raised the issue. *See Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 679 (S.D. Fla. 2009) (noting that arbitration issue was not properly before court on class certification motion), *order vacated in part on reconsideration* (May 26, 2009) (the portion of the earlier cited order was not vacated).

Second, the fact "that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). Rather, courts will

rule on the merits of the class certification motion and reserve "the right to create subclasses or exclude members from the class at a later juncture." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 91 (M.D. Tenn. 2004) (internal citations omitted); *Bittinger*, 123 F.3d at 884; *see also Collins v. Int'l Dairy Queen,* 168 F.R.D. 668, 677 (M.D. Ga. 1996) (establishing subclasses where some of the class members had contracts containing arbitration provisions). Accordingly, while Plaintiffs' state law claims' classes are being certified, the Court reserves the right to create subclasses or exclude class members depending on later developments.

What the foregoing means for the instance notice is the following: the notice will advise that any potential plaintiff who signed the arbitration agreement will be allowed into the state law claims classes for now, but that she may later be excluded.

To address the above changes (and possibly others), counsel shall confer and submit a joint proposed notice to the Court for consideration within **ten** days of this Order.

In conferring about the proposed notice, counsel shall follow the Court's previous ruling. [ECF No. 116, pp. 12-13]. To reiterate, those rulings (as modified here) are as follows:

- The notice will be in 12-point font and have 1-inch margins.

- References to Plaintiffs' proposed FLSA collective action must be removed.

- The notice shall make clear that it applies only to KOD dancers/entertainers, not all KOD employees.

- The notice shall advise putative class members that they may be required to participate in discovery.

- The notice and the envelopes containing the notice will not use language to suggest judicial endorsement of the notice.

- The proposed notice must notify class members that if there is no judgment in their favor, then Defendants may request the Court to order reimbursement of their litigation expenses against them.

- To assist counsel with preparing the revised notice, counsel are directed to review the *Ruffin* notice, ECF No. 34-5.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is **granted in part**. Within ten days of this Order, the parties shall submit a revised proposed class notice for the Court to review. **The parties shall also email a "Word" version of the proposed notice to the Court's e-file inbox.**

**DONE and ORDERED**, in Chambers, in Miami, Florida, January 11, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
All Counsel of Record