UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
1:14-CV-21244-GOODMAN

JASZMANN ESPINOZA, et al.,

      Plaintiffs,

v.                                                                                          CONSENT CASE

GALARDI SOUTH ENTERPRISES,
INC., et al.,

      Defendants.

**DEFENDANTS TERI GALARDI, THE JEG FAMILY TRUST,[1] GALARDI SOUTH ENTERPRISES, INC., GALARDI SOUTH ENTERPRISES CONSULTING, INC., MBJG CORPORATION, JACK E. GALARDI, LLC AND LVA MANAGEMENT & CONSULTING, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THEIR STATUS AS THE PLAINTIFFS' ALLEGED "JOINT EMPLOYERS" AND BRIEF IN SUPPORT THEREOF**

COME NOW DEFENDANTS TERI GALARDI ("Mrs. Galardi"), Individually and as Trustee of The JEG Family Trust, THE JEG FAMILY TRUST ("the Trust"), GALARDI SOUTH ENTERPRISES, INC. ("GSE"), GALARDI SOUTH ENTERPRISES CONSULTING, INC. ("GSEC"), MBJG CORPORATION ("MBJG"), JACK E. GALARDI, LLC ("JEG"), and LVA MANAGEMENT & CONSULTING ("LVA") (collectively, "the Moving Defendants"), and file this Motion for Partial Summary Judgment on the Issue of Their Status as the Plaintiffs' alleged "Joint Employers," and Brief in Support thereof, showing that regardless of whether the Plaintiffs ("Dancers") were "employees" or "independent contractors" of the King of

---

[1] Defendants Galardi South Enterprises, Inc. and Galardi South Enterprises Consulting, Inc. have each specially appeared in this civil action, each preserving the defense of personal jurisdiction in their original pleadings before this Court (Docs. 20 and 21). Additionally, The JEG Family Trust has moved this Court to dismiss Plaintiffs' claims against it for failure to perfect service upon it. (Doc. 167). These Defendants do not waive their personal jurisdictional defenses by filing this Motion.

Diamonds gentlemen's club ("KOD" or "the Club"), the Moving Defendants had no meaningful relationship with any of the Dancers, and were not actively involved in the day-to-day management of the KOD's business operations during any time period relevant to this civil action. As such, even assuming *arguendo* that the Dancers were employees of KOD (which all Defendants expressly deny), the Moving Defendants could not have been "employers" of any of the Dancers, as that term is defined under the Fair Labor Standards Act ("FLSA") or the Florida Minimum Wage Act ("FMWA") or Article X Section 24 of the Florida Constitution (the "Florida Constitutional Provision"). Because only "employers" are liable for violations of the FLSA, FMWA, or the Florida Constitutional Provision, the Moving Defendants are entitled to judgment as a matter of law. Simply put, even if the Dancers were *someone's* employees, they were never the Moving Defendants' employees.

## I.   CONCISE SUMMARY OF THE FACTS

The Moving Defendants refer the Court to their separate Statement of Undisputed Material Facts, filed contemporaneously herewith, and which is incorporated herein by reference.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.  Standard for Granting Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that a Court grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). Thus, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and

2

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id., 477 U.S. at 323. If the moving party succeeds in demonstrating the absence of a material issue of fact, the burden then shifts to the non-movant to show the existence of a genuine issue. Id. A dispute as to a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Further, a dispute as to an immaterial fact does not preclude summary judgment. Id. A defendant moving for summary judgment "may point to a complete lack of evidence when supporting a motion for summary judgment, thus shifting the burden to Plaintiff to point to such facts in the record which would establish a genuine dispute for trial." Sherman ex rel. Sherman v. Helms, 80 F. Supp. 2d 1365, 1373 (M.D. Ga. 2000); Exemar v. Urban League of Greater Miami, Inc., 585 F. Supp. 2d 1377, 1381 (S.D. Fla. 2008) ("[I]t was not Defendant's burden to *disprove* this element of Plaintiff's case. Rather, Defendant met its initial summary judgment burden by asserting that the record was insufficient as a matter of law to establish this element of Plaintiff's FMLA claims.") (quoting Dobrowiak v. Convenient Family Dentistry, Inc., No. 04-73495, 2008 WL 450474, at *4 (E.D.Mich. Feb. 15, 2008)).

B. **Only "Employers" Are Liable for Minimum and Overtime Wages under the FLSA, FMWA, and the Florida Constitutional Provision.**

a. **The FLSA**

The FLSA provides that every "employer" must pay his employees a minimum wage and overtime wages according to specified figures and formulas.[2] The FLSA defines "employer," in turn, as including "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C.A. § 203(d). Whether an individual or entity is an employer within the meaning of the FLSA is a legal determination.  Patel v. Wargo, 803 F.2d 632, 634 (11th Cir. 1986).

b. **FMWA and the Florida Constitutional Provision**

The FMWA provides that employers must pay their employees as follows:

Effective May 2, 2005, ***employers*** shall pay employees a minimum wage at an hourly rate of $6.15[3] for all hours worked in Florida. Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section. The provisions of ss. 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal

---

[2] See 29 U.S.C.A. § 206(a) ("Every ***employer*** shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: … **(C)** $7.25 an hour [following 24 months and 60 days after May 25, 2007].") (emphasis added); accord 29 U.S.C.A. § 207(a) ("Except as otherwise provided in this section, no ***employer*** shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.") (emphasis added).

[3] The FMWA provides for adjustment of the monetary amount of the state minimum wage over time. See F.S.A. § 448.110(4)(a).

4

>regulations and implemented by the Secretary of Labor, are incorporated herein.

F.S.A. § 448.110(3) (emphasis added).

>The Florida Constitutional Provision, in turn provides that

>"As used in this amendment, the terms 'Employer,' 'Employee' and 'Wage' shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.

Fla. Const. art. X, § 24; accord also F.S.A. § 448.101(3) ("'Employer' means any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons."). Therefore, the analysis of whether the Moving Defendants are or were the Dancers' "employers" under the FMWA and the Florida Constitutional Provision should be identical to the analysis of that issue under the FLSA.

### C. The Employment Relationship Requires the Existence of an Actual Relationship

Only an employee's actual employer is liable for minimum and overtime wages under the FLSA, and therefore also under the FMWA and the Florida Constitutional Provision. A defendant can only be a plaintiff's "employer" if that defendant has day-to-day operational control of the organization or some direct responsibility for the supervision of the putative employee. The Eleventh Circuit has emphasized that "the obligation is on each employer to pay each of *his* employees." Patel v. Wargo, 803 F.2d 632, 634 (11th Cir. 1986) (emphasis in original). "There is no suggestion in the language of the [FLSA] that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship." Id. Applying these principles, the Eleventh Circuit has expressly rejected the theory of "enterprise" liability, under which all entities

5

comprising an "enterprise"[4] would be jointly and severally liable for any liability resulting from an employer's violation of the FLSA's minimum wage and overtime requirements. See generally Patel, 803 F.2d at 632-36.

In Patel, the plaintiff was the controller of the Pine Wood Lodge, Inc., which operated a drug and alcohol rehabilitation center. The plaintiff claimed that he was not compensated in accordance with the FLSA's minimum wage and overtime provisions, and sued not only Pine Wood, but also Pine Wood's corporate landlord and Pine Wood's president. Although the district court found that the plaintiff was a non-exempt employee, and that Pine Wood had failed to pay him in accordance with the FLSA, it found that neither that corporation's president nor the facility's corporate landlord were his "employers" under 29 U.S.C.A. § 203(d), and accordingly entered judgment in favor of both of those defendants. The plaintiff appealed, claiming that he had in fact performed some tasks for the corporate landlord, that the landlord and Pine Wood constituted a single enterprise, and that Pine Wood's president was an employer by virtue of his status as president, director, and sole stockholder. The Eleventh Circuit rejected these arguments.

---

[4] The FLSA defines "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor." 29 U.S.C. § 203(r)(1). The chief relevance of whether multiple businesses comprise one "enterprise" arises in connection with the FLSA's general coverage requirement: the FLSA only places minimum wage and overtime requirements upon enterprises whose gross annual sales or business volume is at least $500,000. See 29 U.S.C. §§ 203(s)(1)(A)(ii); 206(a); 207(a). The Moving Defendants do not dispute that they are an enterprise engaged in commerce with gross annual business volume exceeding $500,000, but deny that their "enterprise" status has any bearing on their potential liability. See Patel v. Wargo, 803 F.2d 632, 637 (11th Cir. 1986) ("In conclusion, we hold that the enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship.").

6

With regard to the plaintiff's claim that the landlord was part of the same enterprise as Pine Wood, the Court noted that although a "showing that two entities constitute an enterprise can be the first step in establishing coverage under the FLSA" because coverage is determined in part by an annual dollar volume test, FLSA coverage was not seriously in dispute, and that the "enterprise" concept only affected *coverage* and not liability. Id. at 636 ("In contrast [to enterprise coverage], liability hinges on whether or not there is an employment relationship, for that is the frame of reference in which Congress placed its mandates."). Although there was some evidence that the plaintiff performed some work for the corporate landlord, such work was only occasional, and there was no evidence that the plaintiff contemplated compensation for these acts, or that he was economically dependent on the landlord. Id. As such, the Eleventh Circuit affirmed the district court's holding that he was not an employee of the landlord. Id. at 635.

With regard to Pine Wood's president, the Court held that "to be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." Id. Because the district court had found that the president "was neither responsible for [the plaintiff's] contract nor involved in the day-to-day operation of the facility[,]" the Eleventh Circuit affirmed the holding that the president "lacked the operational control necessary for the imposition of liability as an 'employer' under the FLSA." Id. at 638; see also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150 (11th Cir. 2008) (holding that majority shareholder of greyhound racing company could not be held personally liable for any liability for unpaid overtime wages, because he was not the plaintiff's employer; shareholder "had not taken part in the day-to-day operations of the facility, had not been

7

involved in the supervision or hiring and firing of employees, and had not determined their compensation" during the relevant time period).

Defendants of course acknowledge that in some circumstances a single employee can have multiple joint employers. However, "[t]he focus of each inquiry must be on each employment relationship as it exists between the worker and the party asserted to be a joint employer." Layton v. DHL Exp. (USA), Inc., 686 F.3d 1172, 1177—81 (11th Cir. 2012) (holding that shipping and logistics services provider was not a joint employer of drivers employed by contractor to deliver packages, even though services provider made business decisions that impacted the length of the drivers' work days, and used scanners to track package locations; services provider "bore no financial or managerial responsibility for [the drivers]," and "simply tasked [its contractor,] and thus [the drivers], with macro-level goals—deliver the packages, respond to customer complaints—and provided little guidance regarding the manner by which to execute daily tasks.").

D. **The Moving Defendants Never Had Any Relationship with the Dancers.**

In this case, there is no evidence that any of the Moving Parties ever exercised day-to-day operational control of the King of Diamonds, or ever supervised the Dancers who performed there. As shown by the Declaration of Teri Galardi ("Galardi Declaration"), filed contemporaneously herewith, neither Mrs. Galardi (Individually or as Trustee of the JEG Family Trust), the Trust, GSE, GSEC, MBJG, JEG, nor LVA, has ever been engaged in the day-to-day business operations or management of KOD, nor have any of them ever auditioned, hired, managed, controlled, overseen, directed, disciplined, fined, terminated, or otherwise had any relationship with any entertainer performing at the KOD. (See Galardi Declaration at ¶¶ 12—14. Prior to the July 2014

8

sale of KOD to entities controlled by Elliott Kunstlinger, Fly Low, Inc. was the only entity that had direct relationships with any entertainers performing at the KOD. (Galardi Declaration, ¶ 15). Although MBJG owned the KOD Premises until July of 2014, it was merely KOD's landlord, and was not involved in the management of the KOD club or any entertainers who performed there. (Id., ¶¶11—12, 14).

Although Mrs. Galardi was the controlling shareholder and officer of Fly Low, she was not involved in its business operations, except with respect to preparing the KOD for sale after her father's death on December 1, 2012. (Id., ¶¶ 5, 16). In preparing the KOD for sale, Mrs. Galardi, remodeled the KOD Premises, directed a subordinate to fire former KOD manager Liz Cedeno, and hired a new manager, Akinyele Adams, to run KOD. (Id., ¶¶ 16-20). After Mr. Adams became general manager, he leased the Club from Fly Low on a monthly basis and paid it a fixed monthly fee of $25,000 to cover the Club's basic operating expenses, and personally retained any profits exceeding that fee. (Id., ¶ 20). Ultimately, Mrs. Galardi, on behalf of Fly Low, negotiated and consummated the sale of the KOD club and the KOD Premises to AQFC, LLC; AK 'N ELI, LLC; and KODRENYC, LLC, each of which are controlled by Elliott Kunstlinger, for a combined price of $8,650,000, including $6,000,000 for the KOD Premises and a $2,650,000 promissory note for the KOD club, which remains unpaid. (Id., ¶ 21). There is simply no evidence that any of the other Moving Defendants had anything to do with the KOD's business operations or had any relationship with the Dancers.

### E.  Therefore, the Moving Defendants Were Not the Dancers' Employers.

The facts described above, combined with the Eleventh Circuit's holdings in Patel, Alvarez Perez, and Layton, make it clear that as a matter of law, the Moving Defendants' relationship to the Dancers performing at the KOD during the time period

9

relevant to this case was not sufficient to render any of the Moving Defendants "employers" of such Dancers under the FLSA, the FMWA, or the Florida Constitutional Provision.

### 1. Mrs. Galardi

Like the corporate presidents in Patel and Alvarez Perez, Mrs. Galardi's involvement (Individually or as Trustee of the JEG Family Trust) with the KOD's day-to-day business operations and interaction with the Dancers was so minimal that she could hardly be said to have had any relationship with them whatsoever. Indeed, most of the Plaintiffs whom Defendants have deposed in this case could not accurately identify who Mrs. Galardi was, and several could not even correctly state whether she was a man or a woman.[5] Just as the corporate presidents in Patel and Alvarez Perez had insufficient involvement with the operational and personnel control of their respective corporations to render them employers, Mrs. Galardi's status as controlling shareholder and officer of Fly Low[6] does not render her a joint employer, because she simply had no relevant or substantial interactions with the day-to-day operations or management of the KOD or its Dancers. Cf. Patel, 803 F.2d at 634—38; Alvarez Perez, 515 F.3d at 1150; (Galardi Declaration, ¶¶ 6, 15—20).

---

[5] See Jaszmann Espinoza Dep. 68:11-25 (believing Teri Galardi to be a male general manager of KOD); Stevontrae McDowell Dep. 70:9-10 ("Q: Well, is Teri Galardi a man or a woman? A: Man"); Saabia Fox Dep. 45 (Q: Have you ever met Teri Galardi? A: Terry, the black guy. I'm not sure how many Terry's there is. Q: Well, let me ask it this way. Do you know if Teri Galardi is black, or white? A: I can't say 100 percent."); Jordan Hargraves Dep. 60:10-14 ("Q: Any idea who Teri Galardi is? A: [Jack Galardi's] son maybe. I heard they run strip clubs. I heard they might have a few in Vegas. Q: Have you ever met Teri Galardi? A: No, sir.")

[6] Again, the Moving Defendants deny that the Dancers were ever employees of Fly Low, and contend that all Dancers were independent contractors. However, in the event that this Court holds, or a jury finds, that the Dancers were Fly Low's employees, the Moving Defendants' relationship with the Dancers is so minimal and remote that the Dancers' putative employee status *vis-à-vis* Fly Low could not render the Moving Defendants employers or joint employers.

### 2. **MBJG**

MBJG's relationship to the Dancers at KOD is even more attenuated than the corporate landlord in Patel. In Patel, there was evidence that the plaintiff actually performed occasional work for the primary defendant's landlord. In contrast, there is no evidence that any Dancer in this case ever did *anything* for MBJG. In fact, the evidence shows that MBJG had no engagement with KOD's operations or with the management of any Dancers. (Galardi Declaration, ¶¶ 11—15). Given that the corporate landlord in Patel was not the plaintiff's employer, it follows *a fortiori* that MBJG was never the Dancers' employer. Cf. Patel, 803 F.2d at 634—38. This Circuit has expressly rejected enterprise-wide liability for FLSA minimum wage and overtime obligations. Id.

### 3. **The Trust, GSE, GSEC, JEG, and LVA**

Even more attenuated than the Dancers' relationship to MBJG were their relationships to the Trust, GSE, GSEC, JEG, and LVA (the "Remaining Entities"). Simply put, these Remaining Entities had nothing to do with KOD's operations and no relationship to the Dancers. There is no evidence that any Dancer was economically dependent on any of these entities, or that any of these entities controlled any aspect of any Dancer's work life. Mrs. Galardi, who is the trustee of the Trust and controlling shareholder and officer of GSE, GSEC, MBJG, JEG, and LVA, has testified that none of these Remaining Entities ever managed the day-to-day business operations of the KOD or ever auditioned, hired, managed, controlled, overseen, directed, disciplined, fined, terminated, or otherwise had any relationship with any entertainer performing at the KOD. (Galardi Declaration, ¶¶ 12—14). Because of the complete lack of relationship between these Remaining Entities and either the KOD's operations or the Dancers' working life, it cannot be said that the Remaining Entities were the Dancers' employers.

11

Like the service provider in Layton, the Remaining Entities simply "bore no financial or managerial responsibility for [the Dancers]." Layton, 686 F.3d at 1177—81.  As such, the Remaining Entities are entitled to judgment as a matter of law.

### III. CONCLUSION

Based on the facts and law applicable to this case, it is clear that even if the Dancers were *someone's* employees, they were never the Moving Defendants' employees. Therefore, the Moving Defendants pray that their Motion for Partial Summary Judgment on their Status as Employers be GRANTED.

This 11th day of January, 2016.

Respectfully submitted,

*/s/ Dean R. Fuchs*
DEAN R. FUCHS
Florida Bar No. 38997
STEPHEN W. BROWN
Florida Bar No. 90930

SCHULTEN WARD & TURNER, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, Georgia 30303
(404) 688-6800
(404) 688 6840 facsimile
drf@swtlaw.com
swb@swtlaw.com

Counsel for Defendants

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on this 11th day of January, 2016 on all counsel of record on the Service List below.

*/s/ Stephen W. Brown*
STEPHEN W. BROWN
Florida Bar No. 90930

## SERVICE LIST

Harlan S. Miller, Esq.
3646 Vineville Avenue
Macon, Georgia 31204
E-mail:hmiller@millerpclaw.com
Phone:     (404) 873-8000
Facsimile:  (404) 873-8050
Attorney for Plaintiffs


Dana M. Gallup, Esq.
Law Offices of Dana M. Gallup
4000 Hollywood Blvd.
Suite 265 South
Hollywood, FL 33021
Telephone: (954) 894-3035
Facsimile:   (954) 894-8015
E-mail:      dgallup@gallup-law.com
Attorney for Plaintiffs