UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
1:14-CV-21244-GOODMAN

JASZMANN ESPINOZA, et al.,

      Plaintiffs,

v.                                                                                  CONSENT CASE

GALARDI SOUTH ENTERPRISES,
INC., et al.,

      Defendants.

**MOTION AND BRIEF IN SUPPORT OF DEFENDANTS FLY LOW, INC.,
GALARDI SOUTH ENTERPRISES, INC., GALARDI SOUTH CONSULTING,
INC., MBJG CORP., JACK E. GALARDI, LLC, LVA MANAGEMENT AND
CONSULTING, INC., TERI GALARDI, AND THE JEG FAMILY TRUST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW THE DEFENDANTS[1] and files this Motion and brief in support of their motion for partial summary judgment showing that for the reasons set forth below, assuming *arguendo* that they are subject to the personal jurisdiction of this Court, and further assuming they are deemed Plaintiffs' "employers" or "joint employers" under the FLSA and FMWA, show more fully below that their motion should be granted as a matter of law.

## I.  CONCISE SUMMARY OF NATURE OF CASE

Plaintiffs brought this action alleging Defendants failed to pay Plaintiffs statutory minimum wages and overtime wages as required by the Fair Labor Standards Act of 1938, ("FLSA"), 29 U.S.C. § 201, et seq., and minimum wages as required by the

---

[1] Defendants Teri Galardi, as Trustee of the JEG Family Trust and The JEG Family Trust have not been served in this civil action, and appear herein specially so as not to waive any jurisdictional defense.  Defendants GSE, GSEC and LVA have also objected to this Court's personal jurisdiction, and also appear specially in filing this Motion and Brief.

Florida Minimum Wage Act, Fl. Stat. §448.110 ("FMWA").  Plaintiffs also allege that some were subject to unlawful retaliation by Defendants when they refused to sign an agreement to arbitrate their claims.  Finally, Plaintiffs assert a claim under the Florida Uniform Fraudulent Transfer Act, Fl. Stat. §§ 726.101 – 726.112 ("FUFTA") alleging that Defendant JEG Family Trust made various, unidentified transfers of assets over the last four years for inadequate consideration, which should be canceled.

## II.   CONCISE SUMMARY OF THE FACTS

Defendant refers the Court to its separate Statement of Undisputed Material Facts which is incorporated herein by reference.

## III.   BACKGROUND

King of Diamonds ("KOD" or the "Club") is a Gentlemen's clubs in North Miami featuring naked dancers/entertainers.  Defendant Fly Low, Inc. formerly owned KOD until July 17, 2014, at which time it sold KOD and the KOD Property to AQFC, LLC, AK 'N ELI, LLC and KODRENYC, LLC, New York-based business entities controlled by Elliot Kunstlinger, for $8.65 MM, which included a promissory note payable to KOD for $2.65 MM, which to date has not been paid. [T.Galardi Decl., ¶21].  Prior to the July 17, 2014 sale of KOD, Fly Low, Inc. leased the entire operations of KOD to Akinyele Adams beginning in early, 2013.  [T.Galardi Decl., ¶20].

The job of an entertainer at KOD was to entertain the Club's customers from the Club's stage and on the floor of the Club.  KOD also formerly offered semi-private VIP areas for entertainers to perform for its customers.[2]   KOD historically classified its

---

[2]   A. Adams Dep. 99:2-13.

entertainers as independent contractors.[3] Under such an arrangement, entertainers have for many years enjoyed very lucrative careers performing at gentlemen's clubs, including at KOD.[4]

### IV.     ARGUMENT AND CITATION OF AUTHORITY

**A. Plaintiffs Should Be Estopped from Contending they were Employees to the extent they took an Inconsistent Position before the IRS from which they have benefited.**

   1. *Any Plaintiff Who Filed a Schedule C (or Schedule C-EZ) with the Internal Revenue Service Should Be Estopped from Contending they were Employees in this Civil Action*.[5]

The filing of a Schedule C (or Schedule C-EZ) with the Internal Revenue Service ("IRS") permits a self-employed taxpayer to deduct all business expenses as "above-the-line" tax deductions, thereby providing several material tax advantages. For instance, business expenses deducted on a Schedule C are not subject to the deductibility limitations of itemized deductions;[6] above-the-line deductions can be taken even if a taxpayer elects to take the standard deduction;[7] and above-the-line deductions reduce a taxpayer's adjusted gross income,[8] which serves as the basis for determining eligibility

---

[3]     D. Williams Dep. 81:6-15. Because Fly Low, Inc. believes the issue of whether Plaintiffs were more properly characterized as its "employees" or as independent contractors is subject to numerous, genuinely disputed issues of material fact, Fly Low, Inc. has elected not to move the Court for summary judgment on this issue, since it believes jury questions exist as to this topic.

[4]     See: Seleta Stanton Dep. 29; Netonia Bell Dep. 51 (grossed between $1,000 and $2,000 per night performing at KOD); Queen Lewis Dep. 22 (averaged $1,000/night at KOD).

[5]     Pursuant to Fed.R.Civ.P. 34(a), Defendant previously requested from Plaintiffs the production of their federal income tax returns (including Schedule C's) for each of the calendar years they performed at KOD. To date, no Plaintiff has voluntarily produced their income tax returns, and they have objected to their production. Defendant has attempted to confer with Plaintiffs' counsel on this issue, but as of the filing of this Motion, has not received any response. Defendant intends to seek relief from the Court on this disputed discovery issue.

[6]     See 26 U.S.C. §§ 67 (setting 2 percent floor on miscellaneous itemized deductions) and 68 (setting overall limitations on itemized deductions).

[7]     See generally 26 U.S.C. § 63.

[8]     See 26 U.S.C. § 62(a)(1).

3

for various tax benefits and governmental assistance programs.[9] Importantly, only self-employed persons or independent contractors may file a Schedule C; income from employment is not entitled to this advantaged tax treatment.[10]

Several Plaintiffs[11] in this case, including without limitation, Jammie Parker, Queen Lewis, Ronika Jones and Stevontrae McDowell, have each testified that they believe they have filed one or more Schedule Cs (or Schedule C-EZs) with the IRS during years they performed as exotic dancers for KOD, and thereby have represented themselves to the IRS be self-employed entertainers (the "Schedule C Plaintiffs").[12] Several of the these Schedule C Plaintiffs admit that by filing a Schedule C, they have represented or held themselves out to the IRS as being self-employed entertainers.[13] Because the Schedule C Plaintiffs knowingly benefitted from asserting to the IRS that

---

[9] See, e.g., 26 U.S.C. §§ 32(a)(2)(B) (phasing out availability of earned income credit based in part on taxpayer's adjusted gross income); 222(b)(2)(B) (limiting deductions for or eliminating tuition and related educational expenses for taxpayers over certain adjusted gross income limits); 221(b)(2) (limiting deductions for interest on student loans based in material part on taxpayer's adjusted gross income); 25B (providing tax credit for certain taxpayers with low adjusted gross incomes who make certain qualified retirement savings contributions).

[10] See Franklin v. C.I.R., 3991-11S, 2013 WL 5906132, at *5-6 (T.C. Nov. 4, 2013) ("Independent contractors and self-employed persons may report their compensation less related expenses on business income on Schedule C, thereby avoiding limitations on the deductibility of employee business expenses and other itemized deductions reportable on Schedule A…To be properly reported on Schedule C, a taxpayer's expenses must come from a trade or business of his or her own ***other than that of being an employee***.") (emphasis added); accord Rosato v. Commissioner, T.C. Memo.2010–39.

[11] Of the 30 or so Dancers participating in this case, Defendants have only been able to depose 16 Dancers to date, despite all Dancers' depositions having been previously scheduled and noticed. The failure of all Plaintiffs to make themselves available to be deposed is the subject of an ongoing discovery dispute between the parties that will likely require the Court's assistance to resolve.

[12] See: Parker Dep. 60-61; Lewis Dep. 49-50; McDowell Dep. 52-54; Jones Dep. 64. Defendant suspects additional Plaintiffs may have filed Schedule Cs with the IRS, or otherwise represented themselves to the IRS as being "self-employed" Dancers, but Defendant has been unable to depose all Plaintiffs as of the filing of this Motion because not all Plaintiffs have been made available for their depositions, despite demand therefor. As such, Defendant reserves the right to supplement the list of Schedule C Plaintiffs as their tax returns become available and are produced by Plaintiffs to Defendants.

[13] See: Stevontrae McDowell Dep. 54:7-14; Queen Lewis Dep. 50:16-19; Jammie Parker Dep. 72:16-22.

4

they were self-employed entertainers, and not employees, in their tax returns, basic principles of fairness and equity should preclude them from now claiming that they were employees for the purposes of collecting back-wages under the FLSA.

### 2. *A Party Who Accepts the Benefits of a Transaction May Not Subsequently Take an Inconsistent Position to Avoid the Corresponding Obligations or Effects*

The law has "long recognized" a kind of estoppel which "though it may not amount to a complete estoppel *in pais*, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give a different color to what they formerly said and did." *Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products*, 75 F.2d 13, 17 (5th Cir. 1935). Under this principle, "a party with full knowledge of the facts, who accepts the benefits of a transaction, contract, statute, regulation or order, may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *DeShong v. Seaboard Coast Line R. Co.*, 737 F.2d 1520, 1522 (11th Cir. 1984).[14] At least two circuit Courts of Appeals have applied this same principle to prevent parties who benefitted from certain statements on their tax returns from asserting positions inconsistent with their tax returns in subsequent litigation.[15]

---

[14] Accord Terry v. Norfolk S. Ry. Co., 948 F. Supp. 1058, 1061 (N.D. Ga. 1996) (holding that railroad conductor who was injured on the job was equitably estopped from claiming that he was able to perform job of conductor, where he had continuously received social security benefits for over ten years and renewed his application for them as recently as five years ago, and specifically represented to the Social Security Administration that due to his physical disability, he often was unable to wash his back and put on his shoes, and only sometimes could make his bed).

[15] See In re Robb, 23 F.3d 895, 898 (4th Cir. 1994) (holding that debtor in bankruptcy who had classified certain monthly payments to his ex-wife as alimony on his income tax returns, and deducted those payments from his taxable income, was estopped from subsequently claiming in bankruptcy proceeding that these payments were dischargeable support for his ex-wife's disabled

5

### 3. *The Analysis of Employee Status Substantially Identical Under the Tax Code and the FLSA.*

For taxation purposes, the term "employee" means, *inter alia*, "any individual who, under the common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]" 26 U.S.C. § 3121(b)(2). Courts apply a multi-factored analysis to this definition of "employee" for taxation purposes:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24, 112 S. Ct. 1344, 1348-49, 117 L. Ed. 2d 581 (1992) (citations and punctuation omitted).[16] This is substantially the same test employed by federal courts in determining whether an individual is an employee under the FLSA. *See, e.g.*, *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308,

---

daughter instead of nondischargeable alimony, because "quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects."); Matter of Davidson, 947 F.2d 1294 (5th Cir. 1991) (holding that "[q]uasi estoppel" precluded a bankruptcy debtor ex-husband from claiming that his payment obligations to nondebtor ex-wife were not alimony where he had treated payments as alimony for tax purposes).

[16]   See also Naughton v. C.I.R., 84 T.C.M. (CCH) 275 (T.C. 2002) (holding that taxpayer physician was an employee subject to significant managerial control, he was precluded from filing Schedule C to deduct business expenses); D'Acquisto v. C.I.R., 80 T.C.M. (CCH) 149 (T.C. 2000) (holding that taxpayer voice actor did not have sufficient control over relationship with hiring company at time service was rendered to be classified as an independent contractor, and was therefore precluded from using Schedule C for business expense deductions).

1311-12 (11th Cir. 2013) (considering the following six-factors to determine employee status under the FLSA: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business").

### 4. *The Schedule C Plaintiffs Should Therefore Be Estopped From Benefitting from Positions in this Case Which Contradict Their Representations to the IRS.*

The striking similarity between the tests used to determine employee status under the tax code and under the FLSA make it clear that if an individual represents or holds herself out as an independent contractor for taxation purposes, it would be inconsistent to insist on employee status for FLSA purposes. Because the Schedule C Plaintiffs enjoyed specific tax advantages from their representations to the IRS that they were not common law employees for tax purposes, and the definition of employment for tax purposes is substantially similar to the definition of employment for FLSA purposes, the Schedule C Plaintiffs should not now be permitted to claim that they were the Defendants' employees under the FLSA. Holding otherwise would unfairly permit the Schedule C Plaintiffs to accept the benefits of their tax filings and thereafter take an inconsistent position to avoid the corresponding obligations or effects. *See DeShong*, 737 F.2d at 1522; *Terry*, 948 F. Supp. at 1061; *Robb*, 23 F.3d at 898 (4th Cir. 1994); *Davidson*, 947 F.2d at 1294.

### B. Defendants Are Entitled to Partial Summary Judgment on Count V of Plaintiffs' Substituted Second Amended Complaint against those Dancers who cannot demonstrate to have worked more than 40 hours in any given workweek.

In order to state a FLSA claim for overtime wages, one must prove she worked more than 40 hours in a given workweek. *Diaz v. Jaguar Rest. Group, LLC*, 649 F.Supp.2d 1343, 1361 (S.D.Fla.2009)(Plaintiff must fulfill her burden by (1) proving she has, in fact, performed work for which she was not properly compensated, and (2) producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.)

Several Dancers in this civil action have admitted, in their depositions, that they did not perform at KOD more than 40 hours in any given workweek which they performed at KOD, and it is against those dancers whom Defendants are entitled to partial summary judgment on Count V of their Complaint seeking overtime wages under the FLSA.[17] Some dancers claimed to have kept some form of records which reflect the overtime hours they worked, but no such documents have been produced to Defendant, despite request therefor. Finally, other Dancers kept no records of their hours worked, and have nothing to rely upon but their own memories.[18] In the absence of the production of such records (none of which have been produced by Plaintiffs), Plaintiffs' estimates of their overtime hours are little more than an "unsupported, self-serving

---

[17] See: Saaiba Fox Dep. 17:15 (never worked more than 40 hours in a given week); Jordan Hargraves Dep. 18-19 (worked 4 days/week, 6-8 hours per night, for a total of less than 32 hours/week). Again, to date, Defendant has only been allowed to depose 16 of 30 Dancers in this case, and suspects that if it were permitted to depose the remaining Dancers, there are other Dancers who, like Ms. Fox and Ms. Hargraves, would testify that they too did not perform at KOD more than 40 hours in any given workweek, and therefore, have no FLSA overtime wage claim as a matter of law. Defendant intends to raise this discovery issue with the Court in the near future.

[18] This is yet another group of individuals against whom Defendants are going to seek discovery relief from the Court.

statement [that is] insufficient to avoid summary judgment." *Id.* at 1363, citing *Perlman v. U.S.,* 2002 WL 575788, at *6 (S.D.Fla. Mar. 5, 2002)(citations omitted).  Accordingly, Defendants are entitled to partial summary judgment on Count V of Plaintiffs' Substituted Second Amended Complaint against claimants Saabia Fox and Jordan Hargraves, and any other not-yet-deposed claimant who admits she did not work at least 40 hours in any given workweek during the applicable statutory period.

### C. Defendants Are Entitled to Summary Judgment on Plaintiffs' Statutory FMWA Claim because their statutory notice is defective.

The FMWA contains a statutory notice provision, which requires aggrieved persons to put their employer (or former employer) on formal notice of their claim at least 15 calendar days prior to initiating a civil action against the individual's employer or former employer.  Florida Statute 448.110(6) provides:

> (a)  Any person aggrieved by a violation of this section may bring a civil action in a court of competent jurisdiction against an employer violating this section or a party violating subsection (5).  However, prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.
> (b)  The employer shall have 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved. The statute of limitations for bringing an action pursuant to this section shall be tolled during this 15-day period. If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.

Plaintiffs' Notice[19] is defective for various reasons. First, although the Notice appears to contain the minimum wage to which named Plaintiff Jaszmann Espinoza claims to be entitled, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the Notice, the Notice is defective as a matter of law because it also improperly includes a demand for the payment of liquidated damages, the recovery of alleged "fees and fines," and for attorney's fees and costs, none of which is authorized by Florida Statutes §448.110(b) to be included in the Notice. While the Florida Statute ultimately authorizes the payment of liquidated damages and reasonable attorney's fees and costs to a prevailing plaintiff at trial, these sums are improperly included in the statutory notice required to be sent to employers pre-suit who may wish to satisfy the claim prior to the filing of any civil action. The inclusion in Plaintiff's Notice and demand for payment of liquidated damages, payment of "fees and fines," and attorney's fees and costs, render the Notice defective as a matter of law, and as a result, Defendants are entitled to summary judgment on Plaintiff's FMWA claim.

Plaintiff's Notice is also deficient for other reasons, too – (1) it was never sent to several entities whom Plaintiffs claim to have been their "employer;" and (2) the Notice, as written, never included the necessary, statutory damages information for named Plaintiffs Seleta Stanton, Tiffany Thomson, Douganna Ballard and Janice Bailey, or for any other claimant Plaintiffs seek to include in a recovery under the statute.

Moreover, the Notice was addressed to "Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., Fly Low, Inc., Teri Galardi, Michael Kapp (sic) and Dennis Williams" c/o their counsel of record, Dean R. Fuchs. The Notice, on the other

---

[19] CM/ECF No. 14-1.

10

hand, is not addressed, and was never addressed, to co-Defendants MBJG Corp., Jack E. Galardi, LLC, LVA Management & Consulting, Inc., the JEG Family Trust, or Teri Galardi, as Trustee of The JEG Family Trust. When a plaintiff fails to provide the statutory pre-suit notice to all persons whom she subsequently sues as an "employer" within the meaning of the FMWA, the plaintiff has failed to state a claim upon which relief may be granted as to that defendant. The pre-suit notice requirements serve an important public policy interest in protecting employers from being inundated with lawsuits. Garcia-Celestino v. Ruiz Harvesting, Inc., Case No. 10-542, 2013 WL 3816730 (M.D. Fla. July 22, 2013); Johnson v. Nobu Associates South Beach, LP, Case No. 10-21691, 2011 WL 772874 (S.D. Fla. Feb. 28, 2011 ("Permitting counsel to inflate the notice of deficiency would undercut the statutory intent of the Florida Minimum Wage Act."). Since Defendants MBJG Corp., Jack E. Galardi, LLC, LVA Management & Consulting, Inc., the JEG Family Trust, or Teri Galardi, as Trustee of the JEG Family Trust were never provided the statutory notice prior to being sued, each Defendant not receiving statutory notice is entitled to summary judgment on Plaintiffs' FMWA claims as a matter of law. Thus not only is the Notice deficient by virtue of Plaintiffs' failure to send it to all Defendants whom they claim were their "employers" under the FMWA, it is also deficient in that it contains none of the required back wage data or dates for named claimants Seleta Stanton, Tiffany Thomson, Douganna Ballard and Janice Bailey (and any other claimant whom Plaintiffs seek to recover under the statute).

### D. Defendants Are Entitled to Summary Judgment on Plaintiffs' Constitutional FMWA Claim because it is not independent of their Statutory Claim, and Plaintiffs' statutory notice remains defective.

Plaintiffs have also asserted a claim for allegedly unpaid wages under Article X, § 24 of the Florida Constitution ("the Florida Constitutional Provision"). [See Doc. 140,

11

Count III, ¶¶ 145—148]. The Florida Constitutional Provision provides in relevant part that "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida[,]" Fla. Const. Art. X, § 24(c), and that "[t]he state legislature may by statute establish additional remedies or fines for violations of this amendment, raise the applicable Minimum Wage rate, reduce the tip credit, or extend coverage of the Minimum Wage to employers or employees not covered by this amendment." Fla. Const. Art. X, § 24(f). The Southern District of Florida has held that this language "granted the Florida Legislature the ability to enact implementing legislation," and that "the FMWA does not prevent an individual from enforcing his rights under the Florida Constitution[.]" Montes v. M & M Mgmt. Co., 15-80142-CIV, 2015 WL 4077463, at *1-3 (S.D. Fla. July 6, 2015). Accordingly, the FMWA's notice requirement is "binding and enforceable on plaintiffs alleging violation of the [Florida Constitutional Provision]." Id. Allowing a cause of action to proceed under the Florida Constitutional Provision without meeting the notice requirement would render "the FMWA meaningless." Id. Therefore, this Court has held that "any claim brought pursuant to Fla. Const. Art. X, § 24 must comply with the pre-suit notice requirements of Fla. Stat. § 448.110(6)." Id. (holding that "because Plaintiffs have not alleged compliance with the FMWA's pre-suit notice requirement in their Amended Complaint, Plaintiff's minimum wage claim under Fla. Const. Art. X, § 24 (Count III) is dismissed."). For the same reasons summary judgment must be granted on Plaintiffs' Statutory FMWA claim, so too must summary judgment be granted on Plaintiffs' Constitutional FMWA Claims.[20]

---

[20] If this Court agrees with Defendants' contention that Plaintiffs' claims under the FMWA's Statutory and Constitutional Provisions both fail as a matter of law, then this Court should deny Plaintiffs' Renewed Motion for Rule 23 Certification of State Law Minimum Law Claims (Doc. 178) as *moot*.

### E. Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claim Pursuant to the FMWA Claim.

Federal Courts are courts of limited jurisdiction. In 1973, Congress codified the now well-entrenched jurisdiction doctrine known as pendent and ancillary jurisdiction. Section 1367(c) provides in pertinent part:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a notice or complex issue of State Law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.

28 U.S.C. §1376. The Eleventh Circuit has stated that "a federal court will find substantial predominance (and not exercise supplemental jurisdiction over state law claims) when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 744 (11th Cir. 2006).

Applying Section 1376 to this civil action, the issues with respect to the FMWA claim will substantially overwhelm the FLSA claim, given the number of putative claimants it will cover (as compared to the number of claimants who opted in under Section 216(b)), coupled with the FMWA's longer statute of limitations than the FLSA, Florida's higher minimum wage than the federal minimum wage, Florida's statutory notice provision and the ongoing dispute whether the Florida Constitutional Provision provides a separate cause of action for minimum wages than does Florida's statutory provisions. Presently, only 30 Dancers are pursuing FLSA claims against Defendants, while a class of many hundreds (or possibly more) will be involved in pursuing FMWA claims if Plaintiffs' Rule 23 motion is granted. The assertion of the FMWA claims basically renders Plaintiffs' FLSA claim moot since each hour they recover under the

13

FMWA will subsume the corresponding hour under the FLSA because it is worth more under the FMWA than it is under the FLSA. Not only would Plaintiffs' state law claims tend to dominate over the federal claim and obscure its significance, the FMWA claim may raise novel or complex issues of state law, such as interpreting the Florida Statute's pre-suit notice requirement or a Florida Constitutional challenge, both of which are better resolved by a Florida state trial court and the Florida courts of appeal. For all of these reasons, the Court should decline to exercise federal jurisdiction over Plaintiffs' FMWA claim, and it should be dismissed because that claim presents questions of Florida state law which would otherwise predominate over the federal claims presented here.

**F. Defendants Are Entitled to Summary Judgment on Plaintiffs' FUFTA Claims because Plaintiffs have failed to join necessary parties to assert a FUFTA claim.**

Plaintiffs' Substituted Second Amended and Supplemental Complaint [CM/ECF No. 140] appears to assert a claim under Florida's Uniform Fraudulent Transfer Act, Fl. St., §§ 726.101 – 726.112 ("FUFTA"), alleging that Defendant The JEG Family Trust made transfers of its assets during the last four (4) years for the purpose of avoiding the claims of creditors (including any such transfers to Teri Galardi individually), and specifically including alienated assets previously owned by Fly Low, Inc. and/or MBJG, and/or LVA, and or Jack E. Galardi, LLC." [CM/ECF No. 140, ¶174]. Although they have no proof supporting such allegations, Plaintiffs seek the judicial rescission of *all transfers* from Defendant The JEG Family Trust to other Defendants, without identifying any specific transfer(s) which they contend to have been fraudulently made, or made

14

without adequate consideration.[21] [CM/ECF No. 140, ¶175]. Nowhere in the record do Plaintiffs identify any alleged transfers between the Trust and any other entity.

Plaintiffs also apparently seek the rescission of the sale of KOD and the KOD Property between Defendants Fly Low and MBJG from purchasers AQFC, LLC, AK 'N ELI, LLC and KODRENYC, LLC.[22] [CM/ECF No. 140, ¶¶ 177-183]. After learning of the sale of KOD and the KOD Property, this Court gave Plaintiffs ample opportunity to add whatever additional defendants to this civil action they felt were necessary to prosecute their claims.[23] And, although Plaintiffs did name AQFC, LLC, AK 'N ELI, LLC and KODRENYC, LLC, the purchasers of KOD and the KOD Property, as party defendants for a brief of time in early 2015 [CM/ECF No. 140], Plaintiffs elected to voluntarily dismiss them from the civil action on March 9, 2015. [CM/ECF No. 162].

Most courts have found that transferees who currently hold an interest in the property transferred are necessary parties to claims under the Uniform Fraudulent Transfer Act. See e.g., Martinez v. Balbin, 76 So. 2d 488, 490 (Fla. 1954) (finding the recipient of a fraudulent transfer is an indispensable party when the recipient is charged with participation in the fraud); Brown Bark II, L.P. v. Coakley, 934 N.E. 2d 991, 996-97 (Ohio Ct. App. 2010); Reed v. Reed, 763 N.W. 2d 686, 693-94 (Neb. 2009)(holding that transferees were necessary parties to the plaintiff's UFTA claim, but were not necessary to adjudication of the action because the plaintiff decided to waive her UFTA claim); Nastro v. D'Onofrio, 263 F.Supp. 2d 446, 450 (D.Conn. 2003) ("In an action to

---

[21] The JEG Family Trust has never been properly served with process in this civil action, and is the subject of a separate, pending motion to dismiss. See: CM/ECF Doc. No. 167.

[22] The rescission of the sale of KOD and the KOD Property is already the subject of a separate civil action filed in Florida state court: AK "N" ELI, LLC, KODRENYC, LLC and ELLIOT KUNSTLINGER v. FLY LOW, INC., MBJG INVESTMENT CORP. and TERI GALARDI, In the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, Circuit Civil Division Case No. 2014-27100-CA-01.

[23] See: CM/ECF No. 131.

15

set aside a fraudulent conveyance, the transferee of the assets at issue is a necessary party to the lawsuit because the action to set aside the allegedly fraudulent transfer necessarily impacts the transferee's interest in the property the transferee received.") (internal footnotes omitted). These decisions are to be given persuasive effect because the Florida legislature has mandated that FUFTA be "construed to effectuate its general purpose to make uniform the law with respect to the subject of the law among states enacting it." Fla. Stat. § 726.112. Plaintiffs' voluntary dismissal of Defendants AQFC, LLC, AK 'N ELI, LLC and KODRENYC, LLC mean that these transferees of KOD and the KOD Property are necessary (and indispensable) parties to Plaintiffs' FUFTA claim, who are no longer parties to this case before the Court, and therefore, Defendants should be granted summary judgment on Plaintiffs' FUFTA claims as they related to KOD and the KOD Property.  To the extent that Plaintiffs contend The JEG Family Trust (or Teri Galardi, in her capacity as its trustee) have any liability under FUFTA, these Defendants are not properly before the Court as they have never been served with civil process within the time permitted for Plaintiffs to do so.

The case at bar also meets the requirements of the second prong of the Rule 19 test. Under the second prong, a party should be joined when the party claims an interest related to the subject of the action and that the claim will impede that party's ability to protect the interest, or leave the party subject to multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). In City of Marietta v. CSX Transportation, 196 F.3d 1399, 1305 (11th Cir. 1999), the Court stated the query as follows, whether "in equity and good conscience" the action should go forward without the missing party. CSX Transp., 196 F.3d at 1305. The answer under both analyses is that this case should not move forward without the missing parties because those parties will be impeded from protecting their

16

interests and could be subject to multiple, inconsistent obligations or later be estopped and precluded from asserting claims or defenses. This is yet another reason why Defendants should be granted summary judgment on Count IX of the Substituted Second Amended and Supplemental Complaint. To determine if a case may proceed without a potentially indispensible party, the court will look to see if a judgment rendered without that party will leave the missing party subject to inconsistent obligations and/or preclude that party from defending itself. Under federal law, *res judicata* will bar a claim when all of the following elements are met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1296 (11th Cir. 2001). Likewise, collateral estoppel will bar a claim "when the parties are the same (or in privity) and if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." *Pemco Aeroplex,* 383 F.3d at 1285 (quoting *In re Southeast Banking Corp.,* 69 F.3d 1539, 1552 (11th Cir. 1995)). Applying either of these analyses to the case at bar, the Court will find that the potentially indispensible parties will be prejudiced if not joined.

## CONCLUSION

For all of the above and foregoing reasons, Defendants pray that this Motion for Summary Judgment be **GRANTED**.

This 11th day of January, 2016.

    Respectfully submitted,

    */s/ Dean R. Fuchs*
    DEAN R. FUCHS
    Florida Bar No. 38997

|  |  |
|---|---|
|  | STEPHEN W. BROWN |
|  | Florida Bar No. 90930 |

SCHULTEN WARD & TURNER, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, Georgia 30303
(404) 688-6800
(404) 688 6840 facsimile
drf@swtlaw.com
swb@swtlaw.com

                                                                                        Counsel for Defendants

**Certificate of Service**

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on this 11th day of January, 2016 on all counsel of record on the Service List below.

**/s/ Dean R. Fuchs**
Dean R. Fuchs

**SERVICE LIST**

Harlan S. Miller, Esq.
3646 Vineville Avenue
Macon, Georgia 31204
E-mail:hmiller@millerpclaw.com
Phone:    (404) 873-8000
Facsimile:  (404) 873-8050
Attorney for Plaintiffs


Dana M. Gallup, Esq.
Law Offices of Dana M. Gallup
4000 Hollywood Blvd.
Suite 265 South
Hollywood, FL 33021
Telephone: (954) 894-3035
Facsimile:   (954) 894-8015
E-mail:     dgallup@gallup-law.com
Attorney for Plaintiffs