UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
1:14-CV-21244-GOODMAN

JASZMANN ESPINOZA, et al.,

    Plaintiffs,

v.                                                    CONSENT CASE

GALARDI SOUTH ENTERPRISES,
INC., et al.,

    Defendants.

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' FIRST MOTION IN LIMINE

Defendants Fly Low, Inc. f/d/b/a King of Diamonds ("KOD") and Teri Galardi, by and through undersigned counsel, file this Brief in Opposition to Plaintiffs' First Motion in Limine [ECF 293].

## ARGUMENT AND CITATION OF AUTHORITY

### I. Evidence Proffered by Fly Low, Inc.

There are limited and enumerated categories of individuals that a corporate deponent can be required to designate as corporate representatives, namely "officers, directors, or managing agents, or … other persons who consent to testify on its behalf[.]" Fed. R. Civ. P. 30(b)(6). During the discovery phase of this civil action, Plaintiffs served upon Fly Low, Inc. a deposition notice. (Exhibit 1; D.E. 293-1). Attached to the deposition notice was a "Schedule A" identifying 60 discrete and detailed topics upon which Plaintiffs' counsel intended to examine Fly Low.

Fly Low designated Teri Galardi, its CEO, as its designee, as she was the only remaining person available to testify for Fly Low in 2015, and no other individual remained employed by

1

Fly Low or available to testify on its behalf. Prior to Teri Galardi's appearance at the deposition, Fly Low's Counsel sent a letter to Plaintiffs' counsel, advising Plaintiffs' counsel that because of the known sale of KOD in mid-2014, Fly Low did not have any employee with knowledge relating to the majority of topics contained within Plaintiffs' deposition notice to Fly Low, but did supply Plaintiffs with the names of individuals who such personal knowledge. (Exhibit 2). Specifically, Fly Low's counsel advised Plaintiffs' counsel in relevant part as follows:

> … Fly Low, Inc. formerly owned the gentlemen's club known as King of Diamonds ("KOD" or the "Club") in north Miami.  As you also know, **_Fly Low, Inc. sold KOD last summer_**.  When it was sold, several of the individuals who formerly worked at or operated KOD for or under contract with Fly Low followed the Club at the time of the sale, and have not been affiliated with Fly Low since that time.  **_These individuals include Akinyele Adams, Rick Taylor, Bob Hilton, and Terry Elliot_**, among several others.  I raise this point simply to share with you that **_Fly Low currently has no representative who is competent to testify about all of the examination topics contained in your deposition notice(s)_**.  Stated another way, because **_virtually all of the individuals who formerly had some managerial authority over KOD on a day-to-day basis are no longer affiliated with Fly Low_** (and have not been since last summer), Fly Low does not have the ability to designate them to appear on its behalf to testify, and those who remain are likely to have limited information.  We suspect this will make it somewhat difficult, if not impossible, for Fly Low to respond to some of the specifically-designated topics like "discipline of dancers" (topic 19), "complaints made by dancers regarding payments, wages, tips, etc." (topic 20), and "any agreement, contract or other document signed by any plaintiff" (topic 23).  **_The individuals who may know the answers to such examination subjects simply are no longer under the control of Fly Low, Inc._**

(Id.) (emphasis added).

Therefore, Fly Low gave Plaintiffs notice, early in the discovery period, that no current officer, director, or managing agent of Fly Low had knowledge of many topics contained within Plaintiffs' deposition notice. Plaintiffs learned in mid-2014 that KOD was being sold to a third-party purchaser.  Fly Low has provided in discovery the identities of persons believed to have knowledge of the topics identified in the deposition notice, and several of those witnesses were deposed. Fly Low advised Plaintiffs that Fly Low could not designate the individuals with

knowledge on the requested topics as corporate representatives for Fly Low under Fed. R. Civ. P. 30(b)(6), because Fly Low no longer had the ability to compel their appearance at a deposition. Plaintiffs could have raised the adequacy or sufficiency of Defendant's Rule 30(b)(6) testimony during the discovery period (but did not), in which case, Defendants would have explained to the Court its dilemma in not having access to the managers who formerly operated KOD, and the Court could have fashioned an appropriate remedy at that time. Instead, Plaintiffs seek to play "gotcha," and seek to penalize Fly Low for failing to put up a more informed designee, even though Plaintiffs were fully aware, prior to the deposition of Teri Galardi, that it had no ability to compel testimony from such individuals in 2015. The fact that Fly Low sold the King of Diamonds and underwent significant personnel changes caused Fly Low to lose significant institutional knowledge about employment practices at the King of Diamonds. That sale was not hidden from Plaintiffs, and should not preclude Fly Low from defending itself in this lawsuit.

Plaintiffs now seek to exclude from evidence virtually any and all evidence which could conceivably be proffered by Fly Low, Inc. on the grounds that Fly Low's Rule 30(b)(6) representative, Teri Galardi, could not testify substantively in response to the 60 topics identified in Plaintiff's deposition notice. (Exhibit 1). Plaintiffs seek to hamstring Fly Low by preventing it from proffering virtually any and all evidence at trial unless Teri Galardi, Fly Low's President/CEO and only remaining representative, was able to speak knowledgeably on the subject during her deposition taken on March 25, 2015.

As the Court will recall, during the early summer of 2014, Fly Low sold KOD to a third-party purchaser, leaving it with no officer (other that Teri Galardi) or managerial employees who had knowledge of most of the topics contained within Plaintiffs' deposition notice. Despite this, Plaintiffs' counsel did depose Steve Ennis (VP of Fly Low, Inc.) and Robert Hilton (former

3

KOD Food and Beverage Manager) on October 21, 2014, and deposed Akinyele Adams (former KOD General Manager) on October 22, 2014.  During those depositions, Plaintiffs' counsel exhaustively cross-examined these former KOD managers about all of the issues he now complains that Ms. Galardi was unable to answer.  Plaintiffs' counsel was able to conduct a sifting and thorough examination of Fly Low, Inc.'s former management personnel about all of the "economic realities test" issues during the early stages of the discovery period in this civil action, but complain that because Ms. Galardi could not answer counsel's questions, Fly Low should be precluded from presenting any evidence at trial.  Defendants had no control over the decision of Plaintiffs' counsel to wait until nine (9) months after Fly Low sold its only asset, KOD, to formally notice Fly Low's Rule 30(b)(6) deposition, that no one (other than CEO/President Teri Galardi), remained physically available to speak for Fly Low and offer testimony on a large variety of subjects about which Fly Low's former managers had already been deposed.

Several individuals including Teri Galardi, Dennis Williams, Akinyele Adams, Steve Ennis and Robert Hilton have all given sworn testimony on behalf of Fly Low, Inc. in this civil action.  Plaintiffs' First Motion in Limine does not inform the Court that just nine months before the Rule 30(b)(6) deposition of Fly Low, Plaintiffs' counsel deposed Akinyele Adams, Steve Ennis or Robert Hilton at length, each of whom had considerably more knowledge about the internal operations of Fly Low and KOD than did Ms. Galardi.  Nor do Plaintiffs inform the Court in their Motion that during this civil action Fly Low has (a) responded to multiple sets of written interrogatories served by Plaintiffs Espinoza, Stanton and Thompson; (b) responded to an eye-popping **_187_** separate Requests for Admissions; and (c) has produced over 13,000 pages of responsive documents to Plaintiffs' counsel.  This stands in stark contrast to the fact that (1)

many Plaintiffs never appeared for or made themselves available for depositions in this civil action; (2) many Plaintiffs never responded to Rule 33 Interrogatories served upon them; and (c) virtually no Plaintiff produced a single document in this proceeding. Defendants have never represented to Plaintiffs that Ms. Galardi was well-versed in the day-to-day operations of Fly Low or KOD. Indeed, the opposite is true. (Exhibit 2). Fly Low has participated in this civil action to the best of its ability. Notwithstanding these facts, Plaintiffs aggressively argue that because Ms. Galardi, Fly Low's only remaining and available officer, could not respond to most of Plaintiffs' questions (after KOD's managers had previously been deposed), that Fly Low should not be permitted to proffer any evidence during the trial of this case.

This issue has arisen once before, albeit in the context of an AAA arbitration proceeding between an entertainer and KOD, represented by the same counsel in this civil action. In the *Matter of Arbitration between Ashley Delgado, Claimant v. Fly Low, Inc. and Teri Galardi, Respondents*, Claimants' counsel wanted to take a Rule 30(b)(6) deposition of Fly Low in 2016. In that proceeding, Plaintiffs' counsel served a similar, sweeping Rule 30(b)(6) deposition notice upon Fly Low. Again, Respondents' counsel objected to the Rule 30(b)(6) deposition notice attempted to explain the difficulty he had with making a corporate representative available for a deposition, given that Fly Low had sold all of its assets in mid-2014, and no longer had any employees (other that Ms. Galardi) to testify on behalf of the company. After raising this discovery issue with the designated Arbitrator, he ruled as follows:

> The Arbitrator was told that the parties had not reached any agreement as to depositions. After some discussion about the issue of depositions, and particularly the issue of Respondent Fly Low producing (or being able to produce) one or more witnesses in response to a Rule 30(b)(6) notice, the Arbitrator …. encouraged counsel for the parties to cooperate and to produce, if possible, witnesses the other side wants to depose if the non-requesting side has any "sway" with a requested deponent. However, given Mr. Fuchs'[s] statement that Fly Low was no longer operating and therefore he did not know if former

5

employees of Fly Low would voluntarily appear (i.e., he thought he likely had "no sway" with those possible deponents), the Arbitrator stated that Claimant might have to seek to compel the testimony of former employees of Fly Low.

(Exhibit 3, Ashley Delgado v. Fly Low, Inc., et al, AAA Case No. 01-16-0000-3955, Order No. 2: Report of November 16, 2016 Discovery Conference).[1] What the Arbitrator determined was that in light of Fly Low's inability to compel the appearance of its former managers/employees to appear for a deposition in the arbitration proceeding, that Plaintiff's counsel remained free to serve a witness subpoena upon any former manager or employee whom he wished to depose.

The same is true here. Unlike Defendants who were denied access and the opportunity to depose numerous opt-in Plaintiffs, Plaintiffs' counsel *did* depose defense witness Teri Galardi, and Fly Low *did* made available, without a subpoena, those witnesses over whom it had some control in 2014 - Akinyele Adams, Steve Ennis, Robert Hilton and Dennis Williams. Had he wished to do so, Plaintiffs' counsel could have attempted to subpoena Rick Taylor, Terry Elliot, Liz Cedeno, or any other former manager of KOD it chose. Instead, Plaintiffs seek to sandbag Fly Low for not making available in a Rule 30(b)(6) deposition testimony which Plaintiffs' counsel had either previously taken in 2014, or testimony from individuals over whom Ms. Galardi and Fly Low no longer had any control.

To the extent the Court is inclined to grant Plaintiffs' First Motion in Limine on this issue, then under the theory of "what's sauce for the goose is sauce for the gander," the Court should likewise grant Defendants' Motion in Limine by excluding any evidence proffered by Plaintiffs Mary Aldridge, Breanna Bonilla, Shannon Brown, Lisa Marie Bruzzi, Tambra Ducker,

---

[1]   Defendants are not suggesting that the Arbitrator's Order is binding on this Court; rather, it is shared simply to show that this issue of Fly Low, Inc.'s inability to make available a corporate designee with knowledge of the topics identified in Plaintiffs' Deposition Notice has been ongoing for some time, and that regardless, Plaintiffs remained free to depose whichever individual(s) they saw fit to depose.

Kristine Glenn, Keli Holmes, Kiara Scott, D'Angela Williams and Samone Williams – all opt-in Plaintiffs -- none of whom appeared for their noticed depositions, produced any documents, and most of whom never bothered responding in any way, shape or form to Defendants' written Interrogatories. Plaintiffs cannot have it both ways, and such a sanction is expressly authorized by Fed.R.Civ.P. 37(d)(1)(A)(i)-(ii).

    **II.**    **Fly Low Produced to Plaintiffs' All Documents In Its Possession, Custody and Control Evidencing When Plaintiffs Performed at KOD and How Much They Paid to KOD.**

Plaintiffs' First Motion in Limine seeks to prevent Defendants from offering evidence of "Dancer Check-In Sheets" and documents "touching on dates/hours worked" by dancers. Defendants produced over 13,000 pages of documents in this civil action, at Plaintiffs' request. Many of those documents were "check-in" sheets used by KOD to record when entertainers arrived at the Club. Because this is a FLSA case, Defendants should be permitted to use records of its own "sign-in" sheets to rebut the testimony of Plaintiffs. The sign-in sheets also often reflect how much dancers paid KOD to perform there on a given night. Since Plaintiffs are seeking to recover their "house fees" (e.g. fees they paid to enter the Club), Defendants should be permitted to use these business records to rebut their testimony on this point. Finally, Plaintiffs' counsel examined KOD's former General Manager on the subject of its check-in sheets when he was deposed on October 22, 2014.

    **III.**    **Evidence of Money Paid to Dancers By KOD's Customers.**

In this federal wage and hour case, Plaintiffs seek to exclude evidence of the amount of money Plaintiffs earned from performing at KOD. They contend, in a motion in limine, that every dollar earned by Plaintiffs were "tips" rather than wages, and, therefore, the tips they earned are irrelevant to whether they earned any wages. Plaintiffs attempt to make what amounts

7

to a summary judgment argument that, as a matter of law, all of Plaintiffs' earnings were "tips" and not wages, therefore evidence of their tips should either be excluded from evidence as a matter of law, or be excluded because such evidence would be confusing to the jury.

Fixed fees, for things like a $10 table-side dance, are not tips. 29 C.F.R. § 531.52 and 55; *Matson v. 7455, Inc.*, CV 98-788-HA, 2000 WL 1132110, at *6 (D.Or. Jan. 14, 2000). ("These definitions, 29 C.F.R. 531.42 and 29 C.F.R. 531.55 makes it abundantly clear that the fixed fees collecting by the plaintiff in exchange for table dances are not 'tips.'"). Moreover, prohibiting Defendants from questioning Plaintiffs about the monies they earned and kept, while permitting Plaintiffs to testify about how much they paid each shift or week in house fees and tip-outs to Club personnel would be even more prejudicial and confusing. In this wage and hour case, the jury needs to understand how entertainers earn money from performing at KOD. The "opportunity for profit or loss" is a key factor in the "economic realities" test used in this Circuit to determine whether the entertainers were properly classified, and preventing Defendants from questioning Plaintiffs or eliciting testimony from them on their opportunity to earn large amounts of money from performing there would severely prejudice Defendants' ability to demonstrate that Plaintiffs were not KOD's employees, but were instead independent contractors. Defendants should be permitted to present evidence of how much opportunity Plaintiffs had to earn (or lose) money from performing at KOD, particularly since many Plaintiffs testified in their depositions that they occasionally suffered financial losses from dancing at KOD – a fact which is antithetical to an employer-employee relationship. Finally, Defendants should be permitted to use Plaintiffs' testimony of their earnings as impeachment evidence at trial.

8

### IV. Evidence on Plaintiffs' (Never Produced) Income Tax Returns and Their Failure to Report KOD Earnings.

Plaintiffs seek to prevent Defendants from proffering into evidence Plaintiffs' income tax returns. That is an impossibility, since despite being requested pursuant to Fed.R.Civ.P. 34, Plaintiffs never produced to Defendants a single tax return filed by any entertainer. Indeed, most of the entertainers who were deposed, admitted they never filed any income tax return, therefore, there is, no income tax return to be tendered into evidence. Because no income tax return was ever produced in discovery, the Plaintiffs' never-produced income tax returns can obviously not be used by Defendant to show that the entertainers themselves characterized themselves as self-employed, independent contractors because, as stated above, for most Plaintiffs, no tax return exists, and to the extent they do exist, they were never produced in discovery, and Defendants do not have them to proffer.

As for proffering evidence on whether Plaintiffs *paid taxes* on their earnings from KOD, such evidence may be permitted to attack a plaintiff's credibility under Fed.R.Evid. 608(b). *Rakip v. Paradise Awnings Corp.,* Case No. 10-20004-CIV, 2011 WL 6029981, at *3 (S.D. Fla. Nov. 30, 2011) (Cooke, J.); *Orellana v. Tecta America South Florida, Inc.*, Case 10-20137-CIV-MORENO, 2011 WL 13220457, at *1-2 (S.D. Fla, May 20, 2011) (allowing evidence of Plaintiff's failure to pay income taxes as impeachment evidence in FLSA case); *Palma v. Safe Hurricane Shutters, Inc.,* Case No. 07-22913-CIV-AMS, 2011 WL 6030073, at *1 (S.D. Fla. Oct. 24, 2011) (Simonton, Mag. J.) (holding that Plaintiffs' failure to file tax returns or to report income on their tax returns was relevant for impeachment purposes); *Barrera v. Weiss & Woolrich*, Case 09-21841-CIV-GRAHAM, citing *Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 681 (S.D.N.Y. 2001) ("Evidence that a witness has failed, for years, to file a tax

return is a matter which affects the witness's credibility.")(allowing use of income tax returns for impeachment purposes).[2]

## CONCLUSION

For all of the reasons stated herein, this Honorable Court should DENY Plaintiffs' First Motion in Limine.

Dated: June 5, 2018.

Respectfully submitted,

/s/ Dean R. Fuchs
Dean R. Fuchs, Esq.
Florida Bar No. 38997
E-mail: d.fuchs@swtwlaw.com
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303
Telephone: (404) 688-6800
Facsimile: (404) 688-6840
Attorney for Defendants

### Certificate of Service

**I certify** that a true and correct copy of the foregoing was served by CM/ECF on this 5th day of June 2018 on all counsel of record on the Service List below.

**/s/ Dean R. Fuchs**
Dean R. Fuchs

---

[2] *But see*: *Ortiz v. Santuli Corp.*, Case No. 08-20218-CIV, 2009 WL 2382144, at *1 (S.D.Fla. Aug. 3, 2009) (precluding defendants from suggesting at trial that Plaintiffs failed to pay income taxes).

10

**SERVICE LIST**
Harlan S. Miller, Esq.
3646 Vineville Avenue
Macon, Georgia 31204
E-mail:hmiller@millerpclaw.com
Phone:     (404) 873-8000
Facsimile:  (404) 873-8050
Attorney for Plaintiffs

Dana M. Gallup, Esq.
Law Offices of Dana M. Gallup
4000 Hollywood Blvd.
Suite 265 South
Hollywood, FL 33021
Telephone: (954) 894-3035
Facsimile:   (954) 894-8015
E-mail:       dgallup@gallup-law.com
Attorney for Plaintiffs