UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-21244-CIV-GOODMAN
[CONSENT CASE]

JASZMANN ESPINOZA, et al.,

    Plaintiffs,

v.

FLY LOW, INC., et al.,

    Defendants.

_____/

## ORDER ON LIQUIDATED DAMAGES MOTION AS TO RETALIATION

Plaintiffs filed a motion for liquidated damages and for the entry of final judgment based upon a jury verdict reached in this case on June 26, 2018. [ECF Nos. 337; 342].

The Court **granted** the motion for liquidated damages on the minimum wage and overtime compensation claims but **denied without prejudice** the motion as to imposing liquidated damages on Plaintiff Seleta Stanton's retaliation claim. This is because, for the retaliation portion of the motion, Stanton relied on an incorrect legal standard and her request lacked factual and evidentiary support. [ECF No. 352, pp. 5-6].

After that Order was entered, Stanton filed a second motion for liquidated damages limited to her retaliation claim, and Defendant filed an opposition response. [ECF Nos. 360; 362]. Plaintiff also filed a memorandum on why this Court should retain

jurisdiction to confirm the other dancers' arbitration awards. [ECF No. 361]. Defendant submitted a responsive memorandum that stated that "Defendants do not contest or dispute this Court's authority to retain jurisdiction to confirm a future arbitration award." [ECF No. 363, p. 1].

## BACKGROUND

This Fair Labor Standards Act ("FLSA") action was filed on April 8, 2014. [ECF No. 1]. The jury trial began on June 22, 2018, and the case was submitted to the jury (as to the claims of the eight Plaintiffs who testified) on June 25, 2018. [ECF No. 331]. The jury returned a verdict in favor of all Plaintiffs who testified. [ECF No. 337].

The jury awarded Plaintiffs, on an individual basis, amounts for: (1) minimum wages, (2) overtime, and (3) damages for the retaliatory firing of Stanton. [ECF No. 337, pp. 3-8].

For the retaliation claim, the jury concluded that: (1) Defendants fired Stanton; (2) Stanton was fired either because she filed this lawsuit or because she refused to sign the mandatory arbitration agreement; and (3) she would not have been fired if she had not filed the lawsuit or if she *had* signed the arbitration agreement. [ECF No. 337, pp. 6-8]. On that basis, the jury awarded Stanton $75,000, after deducting interim earnings for the one-year period after she was fired (April 2014 to April 2015).

## LEGAL STANDARD AND ANALYSIS

The FLSA provides for liquidated damages under 29 U.S.C. § 216(b):

2

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. **Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title**, including without limitation employment, reinstatement, promotion, and the payment of wages lost **and an additional equal amount as liquidated damages.**

§ 216(b) (emphasis added).

The FLSA's anti-retaliation provision, § 215(a)(3), makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding[.]" § 215(a)(3).

In Stanton's first motion, she *assumed* that the liquidated damages imposed on her minimum wage and overtime claims automatically entitled her to liquidated damages on her retaliation claim. However, the applicable legal standard for awarding liquidating damages on a retaliation claim is discretionary. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1241 (11th Cir. 2013) (holding that, unlike the mandatory provision of liquidated damages absent good faith in overtime and minimum wage cases, the damages are committed to the wide discretion of the courts in retaliation cases).

In *Moore*, the Eleventh Circuit found that when determining whether to award liquidated damages for retaliation claims, the courts must make a factual determination

as to whether an award would "effectuate the purposes" of the anti-retaliation provision. 708 F.3d at 1241.

"The primary purpose of the anti-retaliation provision is to ensure that fear of retaliation does not operate to induce aggrieved employees quietly to accept substandard conditions." *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1336–37 (11th Cir. 2002) (internal quotation omitted); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 935 n. 13 (11th Cir. 2000) (comparing general purpose of § 216(b), to compensate a plaintiff, with the effect of the liquidated damages provision, to deter an employer from violating the FLSA's anti-retaliation provision).

Liquidated damages may therefore be appropriate in retaliation cases where the defendant's actions are particularly egregious and contrary to the FLSA. *Leon v. M.I. Quality Lawn Maint., Inc.*, No. 10–20506–CIV, 2013 WL 773475, at **9–10 (S.D. Fla. Feb. 28, 2013) (applying *Moore* and finding liquidated damages appropriate to effectuate the purposes of the FLSA where the defendant's attitude at trial demonstrated an intent to sanction employees for complaining about their rights); *see also Stevenson v. Second Chance Jai Alai, LLC*, No. 5:11-CV-496-OC-37PRL, 2013 WL 1344500, at *4 (M.D. Fla. Apr. 2, 2013) (awarding liquidated damages for retaliation because the defendant's conduct "intentionally flew in the face of the FLSA").

The evidence here supports liquidated damages for Stanton's retaliation claim. First, Stanton discusses a similar case, *Clincy, et al. v. Galardi South Enterprises, Inc., et al.*,

4

2009 WL 2913208 (N.D. Ga. 2009), where the district court entered a TRO requiring the reinstatement of exotic dancers fired at another Galardi-controlled strip club in retaliation for filing suit under the FLSA in 2009, where the defendants were represented by the same defense firm in this case. [ECF No. 360, pp. 3-8]. Next, Stanton discusses Defendants' 2014 arbitration roll out in this case and how this Court previously held that such a policy was "clearly coercive and admittedly designed to undermine this litigation" and that it was "abusive" and "manipulative." [ECF 191, pp. 11-12].

That policy led to the firing of Stanton, and two other dancers, who were already plaintiffs in this FLSA case, because they would not sign a mandatory arbitration agreement, which was implemented *after* this lawsuit was filed. By firing Plaintiffs in an active lawsuit against Defendants, Defendants created an environment of intimidation and manipulation for its dancers. By joining the FLSA case, dancers were faced with the foregone conclusion of economic retaliation, i.e., losing their jobs.

Defendants' actions, in both creating the arbitration roll out policy and firing Stanton, demonstrated their intent to sanction employees for complaining about their rights under the FLSA. Ms. Galardi's resentment toward dancers who would sue for wages was evident when she testified at her deposition that "these girls make a lot of money. Why are they suing us? They make a lot of money." [ECF No. 360-7, p. 100]. Mr. Williams testified at his deposition that FLSA lawsuits against Defendants are "attorney

5

motivated" and "frivolous[.]" [ECF No. 360-8, pp. 45-47]. Defendants' attitude is contrary to the primary purpose of the anti-retaliation provision, which is to ensure that fear of retaliation does not cause employees to knowingly succumb to illegal employment conditions.

Without citing to any supporting legal authority, Defendants claim that liquidated damages are not warranted in this case because deterrence cannot be effectuated because Ms. Galardi sold King of Diamonds and no longer operates the club. The Court is not persuaded by this argument as it would set a terrible precedent for defendants in FLSA cases.

If a defendant could avoid liquidated damages after retaliating against an employee by getting out of the business, then *many* defendants would sell their companies to avoid responsibility. And if the defendant could avoid paying liquidated damages based on his or her bad behavior in the former business, then there is nothing preventing that defendant from continuing unlawful employment policies in his or her future endeavors.

Here, even though Ms. Galardi has sold King of Diamonds, she still is in the adult entertainment industry and controls the policies for dancers in at least four other night clubs. Even though there may not be deterrence in this case for this specific *club*, the primary purpose of the anti-retaliation provision is effectuated by Defendants improving their business practices for their *other* nightclubs.

Defendants also claim that they did not intentionally retaliate against Stanton because manager Akinyele Adams knew dancers only by their stage names and that he asked Stanton if she was a part of the lawsuit but she refused to answer his question. Stanton testified to the same at trial, and that she also refused to answer when another manager asked the same question. [ECF No. 357, pp. 56, 73-74]. Defendants claim that, based on this, they in good faith tried to find out which dancers were already in the lawsuit so that they could avoid giving them arbitration agreements. Defendants also point to Stanton's testimony at trial where she indicated that she found new employment within a week of her termination, and that following this Court's TRO, King of Diamonds offered Stanton reinstatement. [ECF Nos. 356, pp. 203; 357, p. 61].

However, as the Court has previously discussed, the primary purpose of the FLSA's anti-retaliation provision is to deter, not compensate. Thus, even though Stanton received an award from the jury on her claim, found gainful employment soon after her termination, and was offered her job back, none of those events promoted an environment where King of Diamonds employees could pursue FLSA violations without fear of economic retaliation. Nor do they indicate that Defendants are implementing better employment policies in their other clubs. For these reasons, the Court **grants** Stanton's supplemental motion for liquidated damages, and **grants** for *both* motions liquidated damages in the full amount requested:

| Plaintiff | Jury Award | Liquidated Damages | Total |
|---|---|---|---|
| Shanice Bain | $81,508.31 | $81,508.31 | $163,016.62 |
| Netonia Bell | $38,110 | $38,110 | $76,220 |
| Janice Dennis | $104,097.60 | $104,097.60 | $208,195.20 |
| Jaszmann Espinoza | $62,549.76 | $62,549.76 | $125,099.52 |
| Ronika Jones | $158,755 | $158,755 | $317,510 |
| Queen Lewis | $107,228.16 | $107,228.16 | $214,456.32 |
| Steveontrae McDowell | $114,910 | $114,910 | $229,820 |
| Kiara Scott | $18,988.32 | $18,988.32 | $37,976.64 |
| Seleta Stanton | $207,089.20 | $207,089.20 | $414,178.40 |

The Undersigned also **grants** Plaintiffs' request that the Court retain jurisdiction to confirm any future arbitration awards. The Court will enter a separate judgment.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 20, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies Furnished to:**
All Counsel of Record