## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 1:14-CV-21244-GOODMAN

**JASZMANN ESPINOZA, et al.,**

      **Plaintiffs,**

v.                                                      **CONSENT CASE**

**GALARDI SOUTH ENTERPRISES,**
**INC., et al.,**

      **Defendants.**

## TERI GALARDI'S RESPONSE TO
## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES

COMES NOW TERI GALARDI, and files this response to Plaintiffs' Motion for Award of Attorneys' Fees.  [ECF 384].

First, it should be noted that Fly Low, Inc. is presently in bankruptcy in the Northern District of Georgia (Case No. 18-66295-JWC)(jointly administered Case No. 18-65726-JWC). As such, it is protected by the automatic stay of the bankruptcy court and no award of attorneys' fees can be made against it, as to do so would violate the automatic stay.

Second, Ms. Galardi disputes the portion of Mr. Miller's declaration made regarding Ms. Galardi's conferral obligation under Local Rule 7.3(b).  While Mr. Miller did, in fact, share a draft of Plaintiffs' Motion for Attorneys' Fees prior to filing it, and did request conferral with the undersigned (and/or with Ms. Galardi's other counsel, John Christy), the undersigned informed Mr. Miller by e-mail on November 6, 2018 (after explaining there was some initial confusion among Ms. Galardi's counsel as to which attorney would be conferring with Mr. Miller on the draft fee petition) as follows:

Harlan:

It looks like you are stuck with me [as opposed to Mr. Christy] on this matter. I have not yet reviewed your draft fee petition, but I suggest we wait until after the Bktcy Court hears the TRO tomorrow and rules on it before we schedule a conferral meeting.

Agree with me or not (usually you do not), but it is my opinion that if the Bktcy Court grants a TRO or preliminary injunction, you will be unable to file a fee petition until [the TRO] is lifted.

[ECF 348-1, p. 140].

Thus, on November 6, 2018, once it was determined that the undersigned would be the attorney responsible for conferring, the intent (at least from the undersigned's perspective) was to postpone the conferral meeting on Plaintiffs' draft fee petition after the U.S. Bankruptcy Court for the Northern District of Georgia could consider and rule on Debtor Fly Low, Inc.'s motion for a temporary restraining order/preliminary injunction which sought to enjoin further collection efforts against Teri Galardi.   Mr. Miller did not specifically respond to this e-mail.   The following day, on November 7, 2018, the parties informally agreed to "stand down" on further collection efforts against Teri Galardi though November 30, 2018, without any formal ruling by the U.S. Bankruptcy Court.[1]   As such, the undersigned believed the time to confer about Plaintiffs' draft fee petition was extended at least until November 30, 2018.  Despite the informal agreement reached between the parties at the Bankruptcy Court hearing on November 6, 2018, Mr. Miller proceeded to file Plaintiffs' Motion for an Award of Attorneys' Fees against Teri Galardi.

---

[1]     A follow-up hearing was conducted by the U.S. Bankruptcy Court in Atlanta on November 29, 2018, but the undersigned did not attend this hearing.

-2-

Third, while Ms. Galardi does not dispute that Plaintiffs were the prevailing party at trial[2], and that prevailing FLSA plaintiffs are entitled to recover their reasonably incurred attorneys' fees (29 U.S.C. §216(b)), the fees sought by Plaintiffs are unreasonable.  Under the lodestar method applied in this Circuit, attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended.  *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir.1997).  The Plaintiffs bear the burden of documenting reasonable hours expended and reasonable hourly rates.  *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).  The Plaintiffs must also supply detailed evidence of the hourly rates and time expended so that the court may properly assess the time claimed for each activity.  *Id.,* 168 F.3d at 427.  The Court may review the hourly rate and attorney time for reasonableness based on the 12 so-called "*Johnson* factors," including (1) the time and labor required, (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340-41 (11th Cir.1999)(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

<u>Plaintiffs' Counsels' Requested Hourly Rates are Unreasonable</u>

The hourly rates requested by Plaintiffs' counsel are unreasonably high.  Mr. Miller, Plaintiffs' lead counsel, seeks to recover $500 for each and every hour he claims to have worked

---

[2]     Teri Galardi is appealing the Court's "Final Money Judgment" to the U.S. Court of Appeals for the Eleventh Circuit.

on this civil action.  Plaintiffs' local counsel, Dana Gallup, seeks to recover $375 and $400 per hour for the time he claims to have worked on this civil action.  The Court must determine whether the fee applicants have satisfied their burden of establishing that their requested hourly rates are reasonable.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988).  In contrast, the undersigned only charged Defendants $285 per hour for performing comparable work.  (*See:* Decl. of Dean R. Fuchs, Par. 5).  While this Court is deemed an expert when it comes to the prevailing market rate for FLSA attorneys in this district, it should conclude that the hourly rates requested by Messrs. Miller and Gallup are excessive in terms of what are normally considered prevailing market rates for FLSA attorneys in the Southern District of Florida.  In *Brandt v. Magnificent Quality Florals Corp.*, Case 07-CV-20129, 2011 WL 4625379, at *8 (S.D.Fla, Sep. 30, 2011), U.S. Magistrate Judge Andrea M. Simonton determined that hourly rates of $325 and $300 respectively for plaintiffs' counsel was reasonable.  Ms. Galardi submits that such hourly rates are more in line with the prevailing market rate in this judicial district.

<u>Plaintiffs' Counsels' Hours Expended are Unreasonable</u>

In a fee petition, counsel must use "billing judgment" and exclude "excessive, redundant, or otherwise unnecessary" hours, irrespective of the skill, reputation or experience of counsel. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).  When a district court finds the number of hours claimed in unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut. *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir.2008).  Ms. Galardi does not presume to advise the Court which method is preferable – but does believe the fees sought by Plaintiffs' counsel are

unreasonable and include requested fees for hours which are excessive, redundant and/or otherwise unnecessary.

Mr. Miller's hours expended are unreasonable.  He seeks to recover an award for attorney's fees in the amount of $571,600.  [ECF 384-1, p.49].  In contrast, Defendants' counsel incurred roughly one half that amount (only $304,862) in fees defending this matter through November 16, 2018.  (Fuchs Decl., Par. 5).  It should also be noted that the "billing statements" attached as Exhibit A to Mr. Miller's Declaration[3] are not, in fact, actual billing statements. Instead, they appear to be a spreadsheet prepared by Mr. Miller specifically for the purpose of supporting his exorbitant fee petition.  Nowhere in Mr. Miller's Declaration does he explain how he tracked his time, how this document was compiled, what documents he used or reviewed to compile his spreadsheet, whether the information was recorded contemporaneously with the work described (in contrast to an after-the-fact compilation of reconstructed time) or that his billing information was maintained in the ordinary course of his firm's business.

The vast majority of the timesheets submitted by Mr. Miller contain no entry in the column labeled "TKR," (presumably a shorthand for "timekeeper.").  With the exception of the first page [ECF 384-1, p.25] and the first two rows on the second page [ECF 384-1, p.26] the column is blank on almost all of ECF 384-1.  Therefore, it is unclear who specifically performed the work identified in all but the first page of timesheets.

Much of the work performed by Mr. Miller was unnecessary.  For instance, he seeks to recover fees for an "emergency TRO motion" which he brought when Fly Low implemented a mandatory arbitration policy.  [ECF 13, 32, 56, 78].  Of course, there was no bona fide

---

[3]     Defendant questions whether Mr. Miller's "*unsworn*" declaration under penalty of perjury constitutes evidence sufficient to support Plaintiffs' Motion for an Award of Attorneys' Fees.  [ECF 384-1].

"emergency" which necessitated a TRO, and none was granted. [ECF 120].   To the extent Plaintiffs objected to the arbitration agreements they were asked to sign, they could have done so in opposition to a motion seeking to compel arbitration, rather than filing an "emergency TRO" motion, for which Mr. Miller seeks to recover an excessive amount in fees. [ECF 384-1, pp. 26, 29-31, 33].

Another example of unnecessary time Mr. Miller incurred relates to Plaintiffs' state-law claims.  Many of Mr. Miller's time entries relate to prosecuting Plaintiffs' minimum wage claims under Florida law – either the Florida Minimum Wage Act ("FMWA") and/or under Art. X, Section 24 of the Florida Constitution as a Rule 23 class action.  [*See*: ECF 384-1, at pp. 25, 27-31, 36, 38-42).  Mr. Miller filed (at least two) lengthy motions in this civil action related to these claims, seeking to have this Court declare the FMWA unconstitutional, and this Court denied (or struck) both of them.  [ECF 50, 245, 267].   Time spent by Mr. Miller pursuing minimum wage claims under Florida law (which, Defendants note, Mr. Miller is presently pursuing in a Florida court in Miami-Dade County)(**Exhibit A**), but which were dismissed by this Court, should not be considered in the fee petition (which, by definition, would include all of the time entries related to "pre-suit notices" -- a statutory requirement for claims asserted under the FMWA and all related research on Rule 23 or "hybrid" issues) [ECF 384-1, at pp. 25, 27-31, 36, 38-42].  Mr. Miller also improperly seeks to recover fees for things like communications with a class administrator relating to service of class notice when less than a dozen individual dancers actually filed consent forms to opt-into this FLSA civil action.  [ECF 384-1, p. 33 (11/18/14-12/7/14)].  Mr. Miller also improperly seeks to recover for things like motions to exceed page limits on his efforts to seek to have the FMWA declared unconstitutional, and his efforts to communicate with Florida's Attorney General regarding his Motion seeking to declare the

FMWA unconstitutional.  [ECF 384-1, pp. 41; ECF 240, 251-252, 260-262].  Defendants should not be charged with attorney's fees related to Mr. Miller's tilting at windmills, just because he served non-conforming FMWA pre-suit notices on behalf of his clients.

Mr. Miller unnecessarily expanded the scope of this civil action by filing unnecessary motions to compel Defendants' compliance with this Court's August 13, 2014 order [ECF 104] which this Court denied.  [ECF 114].

Mr. Miller improperly seeks to recover attorney's fees related to claims asserted against named defendants, like Galardi South Enterprises, Inc., Galardi South Enterprises Consulting, Inc., MBJG Investment Corp., LVA Management & Consulting, Jack E. Galardi, LLC, Dennis Williams, and Mike Kap, all of whom Plaintiffs voluntarily dismissed from this civil action long ago.  [ECF 384-1, pp. 27; ECF 228].  This Court should not reward Mr. Miller on a fee application for overreaching by naming numerous defendants who never belonged in this civil action in the first place, and whom he voluntarily dismissed from the civil action.  [ECF 384-1, p. 35].  Mr. Miller also improperly seeks to be awarded fees for reviewing documents in unrelated cases [ECF 384-1, pp. 25, 28, 30, 38] and for internet research or work he claims to have performed related to the entities who purchased the King of Diamonds from Fly Low. [ECF 384-1, pp. 34-35 (AK 'N ELI, LLC, AQFC, LLC, KODRENYC, LLC)].

Mr. Miller improperly seeks to recover fees for time spent conferring with an unidentified individual described as "MB" (or "MEB") in his billing statements.  [ECF 384-1, pp. 25-26, 43-44].

Mr. Miller seeks to recover fees associated with a motion to compel discovery from Defendants which this Court denied.  [ECF 384-1, pp. 32].

Mr. Miller seeks to recover fees for time spent on items like "drafting/filing Motion for Extension of time to file Amended Complaint," [ECF 384-1, p. 33 (1/16/2015) and 34 (1/20/2015)] or similar unopposed motions for extensions of time [ECF 384-1, pp. 36, 39] which are not fees which should be reasonably charged to Defendants.

Mr. Miller improperly seeks to recover fees associated with dancer claimants who are not part of this civil action.  [ECF 384-1, pp. 33-35, 39 (Hargraves, Moore, Delgado, Bonilla)].

Mr. Miller also seeks to recover fees for conducting legal research at a rate of $500/hour, when that could be performed by persons, like the mysterious individual identified in the billing statements as "MB" or "MEB," or Mr. Gallup at a significantly lower hourly rate.  [ECF 384-1, pp. 25, 27-30]

Mr. Miller improperly seeks to recover $500/hour for his time spent traveling (including driving) between Miami and Macon, Georgia for various court appearances and trial.  [ECF 384-1, pp. 29, 33, 36, 46-47].

Mr. Miller improperly seeks to recover fees associated with his request for a continuance due to medical issues.  [ECF 384-1, pp. 42].  Defendants never opposed Mr. Miller's request for a continuance for medical reasons.

Mr. Miller improperly seeks to recover fees for time spent researching entities which have nothing to do with this civil action (LVA, La Fuente, Red Eyed Jack) (ECF 384-1, p. 32), Defendants' registered agent (ECF 384-1, p.35) and amending Plaintiffs' Complaint to add a number of new Defendants (and related work), all of whom he subsequently voluntarily dismissed from this civil action.  [ECF 384-1, at pp. 31, 35; ECF 136, 140, 148].  Mr. Miller should not be rewarded and awarded fees for bringing claims against certain parties unrelated to Ms. Galardi, all of which he subsequently voluntarily dismissed.

Mr. Miller improperly seeks to recover fees for time he spent on a fraudulent transfer claim which plead in Plaintiffs' complaint, but which he never prosecuted and never responded to during the summary judgment phase of this civil action.

Mr. Miller improperly seeks to recover fees for time spent opposing efforts to compel arbitration of claims brought by certain dancers [ECF 384-1, pp. 26-27, 29-31; ECF 172], only to subsequently ask this Court to compel Defendants to arbitrate the claims of the same dancers (for which he also asks for fees).  [ECF 384-1, p. 36; ECF 229].  This Court should not award Mr. Miller fees for first vociferously opposing arbitration (including seeking an emergency TRO motion) and also award him fees for subsequently seeking to compel arbitration of dancers' claims.  [ECF 229].

Mr. Miller improperly seeks to recover fees for preparing for various Rule 30(b)(6) depositions which he never took.  [ECF 384-1, pp. 37 (8/20/2015, 8/25/2015)].  He also improperly seeks to recover fees for preparing and taking depositions of parties he named, but subsequently voluntarily dismissed from the civil action, like LVA, GSEC, MBJG and Mike Kap.  [ECF 384-1, pp. 37].

Mr. Miller improperly seeks to recover fees associated with prosecuting claims on behalf of claimant Douganna Ballard, who's wage claims were not identified in her individual bankruptcy proceeding, forcing Defendants to move for summary judgment thereon, and which the Court granted.  [ECF 384-1, pp. 39, 41-42; ECF 233, 289]

Mr. Miller improperly seeks to recover fees for time spent responding to Defendants' interlocutory appeal which Mr. Miller rendered moot by ultimately agreeing to arbitrate the claims of dancers he previously objected to arbitrating.  [ECF 384-1, pp. 38-39].

Mr. Miller unreasonably seeks to recover over 50 hours' worth of time (which he values at $25,100) for his preparation of two pre-trial motions in limine.  [ECF 384-1, pp. 43-44].

Mr. Miller improperly seeks to recover fees for time he spent communicating with a reporter from the Miami Times.  [ECF 384-1, p. 45 (6/6/18 – 6/7/18)].

Mr. Miller improperly seeks to recover fees for time spent preparing for trial witnesses he never called and/or which were not on Defendants' witness list, like Mike Kap and "Disco" Rick Taylor.  [ECF 384-1, pp. 46 (6/13/18)].

Mr. Miller improperly seeks to recover fees for 6 hours during jury deliberations when his billing statements reflect he was only in court for 5 hours.  [ECF 384-1, p. 47 (6/26/18)].

Mr. Miller improperly seeks to recover fees for time he spent reviewing "check-in" sheets, documents which he never proffered into evidence at trial.  [ECF 384-1, pp. 42-43].

Many of Mr. Miller's time entries contain prohibited "block billing" in which it is impossible to effectively distinguish between work performed on Plaintiffs' FLSA claims or on claims for which no fees should be awarded.  [ECF 384-1, *passim.*]

Mr. Gallup's Hours Expended Are Unreasonable.

Mr. Gallup's hours expended are also unreasonable.  [ECF 384-2].  According to Mr. Miller's Declaration, it was Mr. Miller, and not Mr. Gallup, who "performed virtually all of the substantive work in this case…".  [ECF 384-1, Par. 4].  Mr. Miller also avers under oath that the legal work in this civil action was "performed nearly exclusively by a single lawyer [Mr. Miller]…"  [ECF 384-1, p. 15].   Yet, Mr. Gallup also seeks $22,572.50 in fees for his time in this civil action.

Mr. Gallup did not participate in the trial or any hearing in the case, nor did he participate in any mediation or deposition taken in the case. (Fuchs Decl., Par. 13).  In fact, the undersigned

recalls only communicating with Mr. Gallup once by telephone during the entire pendency of the litigation, when Mr. Gallup was unable to get in touch with Mr. Miller.  (Fuchs Decl, Par. 14).  A review of Mr. Gallup's billing statements reflect that his involvement in this civil action appears to have been limited to receiving and filing documents from Mr. Miller for filing, since Mr. Miller, admitted to this Court *pro hac vice*, lacks electronic filing privileges.   Stated simply, Mr. Gallup's role in this civil action was to serve as Mr. Miller's local counsel, which is required by this Court's local rules since Mr. Miller is not formally admitted to practice before this Court. (Fuchs, Decl., Par. 13).

Multiplying the number of hours Plaintiffs' counsel contend they incurred by the hourly rate to which they contend they are entitled yields a lodestar number approaching $600,000.  However, the Court must consider the following *Johnson* factors: (1) the time and labor required, (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Defendants have already addressed the time and labor required above.  There are many items for which Plaintiffs' counsel seek compensation, but which should not be compensated.  As for the second and third *Johnson* elements, at its core, this was a relatively "cut and dried" nine-plaintiff FLSA claim.  Although originally over pleaded with numerous unnecessary parties and claims, at its core (and at trial) it ended up being an otherwise unremarkable, nine-plaintiff

FLSA case in which the Plaintiffs read their damages off pieces of paper authored by Mr. Miller and handed to them on the witness stand at trial.  Not to take anything away from Mr. Miller, who is a competent attorney, this civil action did not require any special legal skills.  The only "novel" or "difficult" question raised in this litigation related to the FMWA claims asserted by Plaintiffs, when they attempted to have the Court declare it unconstitutional because Mr. Miller failed to send proper pre-suite notices on behalf of those entertainers who did not opt-into the FLSA claim asserted in this civil action.  Otherwise, this case presented no real novel or difficult question.

Mr. Miller's (unsworn) declaration contains scant evidence on how his representation of the Plaintiffs "precluded" him from taking other cases.  His evidence on this issue is conclusory and utterly unspecific.  [ECF 348-1, pp.15-16, Par. 40].  Mr. Miller also contends this case was "undesirable," yet such testimony is hard to reconcile with the fact that Mr. Miller frequently represents exotic dancers in nearly identical FLSA cases.  [ECF 384-1, pp. 4-5].  Also, Mr. Miller cannot credibly complain about the "relatively small amount of FLSA damages" to justify his request for nearly $600,000 in fees, as is evidenced by the Court's "Final Money Judgment" in this civil action.

Finally, Mr. Miller intentionally misstates that Ms. Galardi "pocketed" $6,000,000 from the sale of KOD.  [ECF 384-1, Par. 41].  In fact, as Mr. Miller knows well, Ms. Galardi was paid *nothing* by the purchaser for the sale of KOD, and now Ms. Galardi has little more than a large, but uncollectible judgment against the KOD purchaser, Elliot Kunstlinger (which likely explains why Mr. Miller repeatedly rejected a settlement proposal including an assignment of Ms. Galardi's judgment against Mr. Kunstlinger).

Mr. Miller admits he has had very little contact or communication with the entertainers he represented in this civil action because they are "inherently transitory." [ECF 384-1, p. 16, Par. 42].

CONCLUSION

For all of the above reasons, the Court should significantly modify Plaintiffs' request for an award of attorneys' fees in this civil action.

This 30th day of November, 2018.

<div style="margin-left:40%;">

Respectfully submitted,

*/s/ Dean R. Fuchs*
DEAN R. FUCHS
Florida Bar No. 38997
d.fuchs@swtwlaw.com

</div>

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone                                    Counsel for Defendants


**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 30, 2018, I caused to be electronically filed the foregoing **TERI GALARDI'S RESPONSE TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES** with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all attorneys of record.

<div style="margin-left:40%;">

*/s/ Dean R. Fuchs*
DEAN R. FUCHS

</div>